# STATE v. NORTHWEST AIRLINES, INC.[1].

December 18, 1942.

No. 33,176.

[1]Reported in 7 N. W. (2d) 691.

*Doherty, Rumble, Butler, Sullivan & Mitchell,* for appellant.

*J. A. A. Burnquist,* Attorney General, *George B. Sjoselius,* Assistant Attorney General, *James F. Lynch,* County Attorney, and *Andrew R. Bratter,* Assistant County Attorney, for the State.

*Howard C. Westwood, Gerhard A. Gesell, William DuB. Sheldon, Dwight Taylor,* and *Covington, Burling, Rublee, Acheson, and Shorb,* filed a brief *amici curiae,* on behalf of the contentions of appellant, for All American Aviation, Inc., American Airlines, Inc., Braniff Airways, Inc., Canadian Colonial Airways, Inc., Chicago and Southern Air Lines, Inc., Continental Air Lines, Inc., Delta Air Corporation, Eastern Air Lines, Inc., Hawaiian Airlines, Ltd., Inland Air Lines, Inc., Mid-Continent Airlines, Inc., National Airlines, Inc., Northeast Airlines, Inc., Pan American Airways System, Pennsylvania-Central Airlines Corp., Transcontinental & Western Air, Inc., United Air Lines Transport Corp., and Western Air Lines, Inc.

PIRSIG, JUSTICE.

From the findings of the lower court and the stipulation upon which they were based, it appears that defendant is a corporation, organized and existing under the laws of this state with its principal place of business in the city of St. Paul, Minnesota. On May 1, 1939, it owned and operated a fleet of airplanes carrying passengers, property, and mail for hire in interstate commerce on regular schedules between Chicago, Illinois, at one end of the route, and Portland, Oregon, at the other. Regular scheduled stops were made at Milwaukee and Madison, in Wisconsin; Rochester, St. Paul, and Minneapolis, in Minnesota; Fargo, Bismarck, and Mandan, in North Dakota; Miles City, Billings, Butte, Helena, and Missoula, in Montana; and Spokane, Wenatchee, and

Yakima, in Washington. Regular flights were also maintained between Fargo, North Dakota, and Winnipeg, Manitoba, Canada, and since June 1, 1940, between Minneapolis and Chicago.

On May 1, 1939, at defendant's maintenance bases at Chicago, Minneapolis, Fargo, Billings, Spokane, and Seattle, mechanics were employed and the necessary tools and equipment provided for service, repair, and maintenance work. Major repairs and overhaul work were done at St. Paul, where defendant maintained its airplane and engine overhaul base.

At all of the stops, with the exception of St. Paul, defendant employed, on the date stated above, a radio operator and station manager. Baggage handlers, ticket sellers, information clerks, dispatchers, and the like were kept at many of the stops. At all of the stops defendant either owned or leased buildings for housing the operations conducted at these points. At several of the ports at which the planes landed, defendant owned or leased hangars and office space. The flight crews, including pilots, copilots, and stewardesses, were located at definite bases at which they began and ended their runs. One of these was at Minneapolis. The routes of defendant's planes were along fixed paths, marked by radio stations operated continuously by the Civil Aeronautics Authority. Also along the entire routes, at regular intervals, were emergency landing fields maintained by the same authority. These routes were always followed except when weather conditions made it necessary to pursue another course for brief periods.

While flying in the course of defendant's operations, its airplanes were constantly changing from place to place along its routes, and flew from state to state. Their location was constantly changing from one county to another and from one state to another, except for brief stops at the airports and occasional lay-ups for repairs and overhauling.

All of defendant's airplanes were in Minnesota from time to time during the year 1939, carrying passengers, property, and

mail, and they came here also for the purpose of periodic overhauling.

On May 1, 1939, there were present in this state for at least part of the day 17 airplanes. On that date, the total length of the routes over which defendant was operating its scheduled flights was 2,466 miles. Of this total, 320.2 miles were maintained in this state. The scheduled plane mileage on that date over all of these routes was 14,414 miles, of which 2,348.4 were in Minnesota.

Defendant filed its tax return for the year 1939, in which it included a portion of its airplanes at the full value of $77,000. This valuation was based on planes in the state on May 1, 1939. Later, an additional assessment was made by the county auditor in which he included the remaining airplanes owned by the defendant at the full value of $511,500.

From the foregoing facts the lower court concluded that all of the planes "had a situs for taxation in the state of Minnesota and not elsewhere" and accordingly directed judgment to be entered for the taxes upon all of the planes in the sum of $16,913.60, together with penalty thereon, making a total of $18,266.68.

The question before us is whether this state may impose a tax upon all of defendant's planes. The right to do so is attacked on the grounds that it is a violation of the due process clauses of the state and federal constitutions (Minn. Const. art. 1, § 7; U. S. Const. Amend. XIV) and that it is an interference with interstate commerce.

Taking up first the claim that the tax is a violation of due process, the general rule is that a tax by a state which has no jurisdiction to impose it violates the constitutional prohibition against taking property without due process of law. For present purposes it is unnecessary to consider separately the due process clauses of the state and federal constitutions. If under this clause of the federal constitution this state may impose a tax upon all of the planes owned by defendant, it may also do so under the state constitution. The state provision was not intended to be more re-

strictive than that of the federal constitution. State v. Weyerhauser, 72 Minn. 519, 75 N. W. 718; W. J. Armstrong Co. v. N. Y. C. & H. R. R. Co. 129 Minn. 104, 151 N. W. 917, Ann. Cas. 1916E, 335, L. R. A. 1916E, 232. In In re Estate of Taylor, 175 Minn. 310, 315, 219 N. W. 153, 221 N. W. 64, 65, this court said:

"It is our aim to follow the decisions of the Supreme Court of the United States, since we are construing a provision of the federal constitution, although our own state constitution contains a similar provision."

If, therefore, the tax may be imposed under the due process clause of the Fourteenth Amendment, it may also be imposed under our constitution.

The airplane has raised many unique legal questions in other fields. We do not, however, consider it of such a nature that it must be placed in a new and independent category so far as taxation is concerned. It is but personal property used for the transportation of persons and goods. Its distinction lies in that it leaves the ground and travels through the air. But this is not of significance here. The sovereign power and jurisdiction of a state is not limited to the ground. An airplane in the air over the territory of a state is within the state and subject to its sovereign power. As the Supreme Judicial Court of Massachusetts has said in Smith v. New England Aircraft Co. Inc. 270 Mass. 511, 521, 170 N. E. 385, 389, 69 A. L. R. 300, 308:

"It is essential to the safety of sovereign States that they possess jurisdiction to control the airspace above their territories. It seems to us to rest on the obvious practical necessity of self-protection." See also People v. Katz, 140 Misc. 46, 249 N. Y. S. 719.

The question we have, then, is the broader one of when and under what conditions the state of the owner's domicile loses jurisdiction to tax tangible personal property moving about from state to state. May the state of domicile tax the whole thereof?

Two classes of cases have particular bearing on this question. The first deals with ships upon the high seas. It has been held in those cases that where a ship sails from its home port and into the port of a foreign state and stays there but temporarily for the purpose of loading or unloading it cannot be taxed by the latter state. Hays v. Pacific Mail S. S. Co. 58 U. S. (How.) 596, 15 L. ed. 254; Morgan v. Parham, 83 U. S. (Wall.) 471, 21 L. ed. 302; Southern Pacific Co. v. Kentucky, 222 U. S. 63, 32 S. Ct. 13, 56 L. ed. 96. The rule has been applied to ships plying navigable streams. St. Louis v. The Ferry Company, 78 U. S. (Wall.) 423, 20 L. ed. 192; Gloucester Ferry Co. v. Pennsylvania, 114 U. S. 196, 5 S. Ct. 826, 29 L. ed. 158.

In some of these cases the court relied upon the maxim *Mobilia sequuntur personam; immobilia situm. Mobilia non habent sequelam.* Another reason given was that the property had not "become incorporated with other personal property of the state" seeking to impose the tax. Hays v. Pacific Mail S. S. Co. 58 U. S. (How.) 596, 598, 15 L. ed. 254; Morgan v. Parham, 83 U. S. (Wall.) 471, 21 L. ed. 302; and see Old Dominion S. S. Co. v. Virginia, 198 U. S. 299, 25 S. Ct. 686, 41 L. ed. 1059. The more basic reason was given in Southern Pacific Co. v. Kentucky, 222 U. S. 63, 68, 32 S. Ct. 13, 15, 56 L. ed. 96: "The ancient maxim which assigns to tangibles, as well as intangibles, the situs of the owner for purposes of taxation has its foundation in the protection which the owner receives from the government of his residence."

If the ship has obtained an actual situs in a state other than that of the home port, that state might validly subject the ship to the ordinary property taxes of that state. Old Dominion S. S. Co. v. Virginia, 198 U. S. 299, 25 S. Ct. 686, 49 L. ed. 1059. In that event, it has been said that the situs of the domicile yields to the actual situs and resulting dominion of another government.

The second class of cases relating to the question here involved deals with the taxation of rolling stock of railroad companies.

For the purpose of determining whether such property has acquired a situs in a state foreign to that of the domicile of the company, Pullman's Palace Car Co. v. Pennsylvania, 141 U. S. 18, 11 S. Ct. 876, 35 L. ed. 613, introduced a new principle. In that case Pennsylvania imposed what was in substance a property tax upon the cars of an Illinois corporation within the borders of Pennsylvania. A certain proportion of the company's cars was constantly and continuously present there. For that reason, the right of Pennsylvania to impose the tax was sustained, notwithstanding the fact that individual cars making up the average in the state were constantly changing and were there but temporarily. The court looked not at the individual cars but at the average, and that average was permanently located in Pennsylvania. See also Marye v. B. & O. R. Co. 127 U. S. 117, 8 S. Ct. 1037, 32 L. ed. 94. The Pullman Car case, 141 U. S. 18, 11 S. Ct. 876, 35 L. ed. 613, was followed in, among other decisions, American R. T. Co. v. Hall, 174 U. S. 70, 19 S. Ct. 599, 43 L. ed. 899, and Union R. T. Co. v. Lynch, 177 U. S. 149, 20 S. Ct. 631, 44 L. ed. 708. The principle of the case has its limitations. The foreign state may not tax more than the average number of cars present, even though all the cars of the company might at some time during the tax period be actually, but temporarily, present within the state. A tax on all the cars is invalid. Johnson Oil Ref. Co. v. Oklahoma ex rel. Mitchell, 290 U. S. 158, 54 S. Ct. 152, 78 L. ed. 238. It is necessary also that an average number of cars appear to be permanently present. This court has held that where the railroad cars of a foreign corporation are but temporarily here the right to tax does not exist. State v. Union Tank Line Co. 94 Minn. 320, 102 N. W. 721.

Defendant contends that the principle of the Pullman Car decision, 141 U. S. 18, 11 S. Ct. 876, 35 L. ed. 613, is applicable in this case, and that other states through which its planes are routed are entitled to tax the average number of planes constantly present in those states even though any individual plane may be there

but temporarily. The state, on the contrary, takes the position that no situs has been acquired in other states, and, by analogy to the ship cases, this state, being the domicile of defendant, may tax them all. Neither the stipulation nor the findings are as clear as one could wish on whether such an average number of planes was so constantly and permanently in any one state as to acquire a situs there. But we shall not pursue the question, for under the view we adopt it is not a material factor. We concede that the principle of the Pullman Car case is as applicable to planes as it is to railroad cars and that the findings lead to the conclusion that some proportion of defendant's planes acquired a situs in other states and to that extent may be taxed there.

That leaves the further question whether the acquisition of a situs in a foreign state removes the jurisdiction of the state of the owner's domicile to tax. The cases so far discussed do not, except by incidental comment, bear upon that problem. They deal only with the right of the foreign state to tax. So far as a specific item of tangible personal property is concerned, the question was decided in Union Refrigerator Transit Co. v. Kentucky, 199 U. S. 194, 26 S. Ct. 36, 50 L. ed. 150, 4 Ann. Cas. 493. It was there held that if such property has acquired a tax situs in another state it cannot be taxed in the state of its owner's domicile. The principle so laid down has since been uniformly followed. Frick v. Pennsylvania, 268 U. S. 473, 489, 45 S. Ct. 603, 69 L. ed. 1058, 42 A. L. R. 316; Safe Deposit & Trust Co. v. Virginia, 280 U. S. 83, 92, 93, 50 S. Ct. 59, 74 L. ed. 180, 67 A. L. R. 386; Sancho v. Humacao Shipping Corp. (1 Cir.) 108 F. (2d) 157.

It is the claim of defendant that the Transit Company case, 199 U. S. 194, 26 S. Ct. 36, 50 L. ed. 150, established with equal force that the result is the same when the situs is acquired in the foreign state by the application of the doctrine of the Pullman Car case, 141 U. S. 18, 11 S. Ct. 876, 35 L. ed. 613. Hence, since some proportion of defendant's planes may, as conceded, be taxed in

other states, it is claimed that this state has lost its power to tax to a corresponding degree.

A careful examination of the Transit Company case will disclose that it does not go to the length so claimed for it. It appears that there Kentucky sought to impose what was treated as a property tax upon all the railroad cars owned by the transit company, which was incorporated in Kentucky. The headquarters for its cars were located at Milwaukee, Wisconsin, at which point they were rented to shippers who used them for the carrying of freight in the United States, Canada, and Mexico. The court held that Kentucky had no jurisdiction to tax all the cars of the company. The record in the case reveals further that some of the cars were in fact constantly coming into and going out of Kentucky, and that the state trial court had found that a definite average number of cars was in the state during the year for which the taxes were imposed. But it is also evident that there were large numbers of the company's cars which were never within the state at any time during the tax period. The opinion of the court makes it clear that it was this last fact which the court deemed controlling. The court states the question before it to be (199 U. S. 201, 26 S. Ct. 36, 50 L. ed. 150, 4 Ann. Cas. 493) "whether a corporation organized under the laws of Kentucky is subject to taxation upon its tangible personal property, *permanently* located in other States, and employed there in the prosecution of its business." It states further (page 204) that "property which is *wholly* and *exclusively* within the jurisdiction of another State, receives none of the protection for which the tax is supposed to be the compensation," and that such property "does not and cannot receive protection under its laws. * * * [page 206] it is taxable in the State where it is *permanently* located and employed and where it receives its *entire* protection." (All italics supplied.)

In defining the basis upon which the court denied the right to tax, it said (199 U. S. 202, 26 S. Ct. 37, 50 L. ed. 150, 4 Ann. Cas. 493) :

"The power of taxation, indispensable to the existence of every civilized government, is exercised upon the assumption of an equivalent rendered to the taxpayer in the protection of his person and property, in adding to the value of such property, or in the creation and maintenance of public conveniences in which he shares, such, for instance, as roads, bridges, sidewalks, pavements, and schools for the education of his children. If the taxing power be in no position to render these services, or otherwise to benefit the person or property taxed, and such property be wholly within the taxing power of another State, to which it may be said to owe an allegiance and to which it looks for protection, the taxation of such property within the domicil of the owner partakes rather of the nature of an extortion than a tax, and has been repeatedly held by this court to be beyond the power of the legislature and a taking of property without due process of law."

It is plain that the court in denying the right of Kentucky to tax was speaking about those cars which were permanently in other states and did not reach Kentucky at all. The facts did not raise the question, and there is nothing to indicate that the court intended to hold, that cars going from Kentucky and from time to time returning to it could not be taxed by that state because they had contributed to an average which had acquired a situs in another state. The only question before the court was the validity of the tax on all of the company's cars, some of which were permanently in other states. It is noteworthy that the court cites and states the holding of the Pullman Car case without suggesting that it had any direct application to the facts before it. We conclude, therefore, that the case does not sustain the claim of defendant that this state has lost the right to tax all its planes because an average of them had obtained a situs in other states.

The only other cases requiring consideration upon this point are New York ex rel. N. Y. C. & H. R. R. Co. v. Miller, 202 U. S. 584, 26 S. Ct. 714, 50 L. ed. 1155, and Johnson Oil Ref. Co. v. Oklahoma ex rel. Mitchell, 290 U. S. 158, 54 S. Ct. 152, 78 L. ed.

238. In the New York Central case, the state of domicile of a railroad company was permitted to tax all the cars of the company despite the fact that an average number of cars was constantly outside the state. The court distinguished the Pullman Car case, 141 U. S. 18, 11 S. Ct. 876, 35 L. ed. 613, on the ground that it appeared in that case that (202 U. S. 597, 26 S. Ct. 717, 50 L. ed. 1155) "the same cars were continuously receiving the protection of the State and, therefore, it was just that the State should tax a proportion of them." The court expressly reserved the question whether there was "any necessary parallelism between liability elsewhere and immunity at home." That reservation in itself indicates that the court did not consider the question settled by its previous decision in the Transit Company case, 199 U. S. 194, 26 S. Ct. 36, 50 L. ed. 150.

In the Johnson Oil Ref. case, 290 U. S. 158, 54 S. Ct. 152, 78 L. ed. 238, the owner of the cars was an Illinois corporation with its principal place of business at Chicago. Oklahoma sought to tax all the cars of the corporation on the ground that they were from time to time during the year within the state. The court held that the power of Oklahoma to tax the cars was limited to the average number of cars in the state and that a tax on all was invalid. Broad language was used by the court in its opinion, and, as ably shown by the dissenting opinion of Mr. Justice Loring, it is reasonably susceptible of more than one interpretation. We believe that it should be read in the light of the facts before the court. It was dealing with a situation where the only basis of taxation appearing was the average number of cars present in the state. The decision and the opinion are not inconsistent with permitting a state to tax additional or all the cars if additional and constitutionally recognized grounds for the tax exist. If we find, therefore, that an adequate basis existed in this state for taxing all the planes, the Johnson case does not deny the right to tax merely because other states also have the power to do so.

We are left, therefore, without any controlling authority to guide us, and in its absence we must resort to the basic constitutional principles upon which the right or jurisdiction of a state to tax depends. In so doing, we cannot rest upon any logical application of some legalistic concept of *situs*. When we say that property has a *situs* within a state for the purposes of taxation we mean only that it is proper and consistent with due process that that state may impose the tax. There is no constitutional justification for giving the concept a controlling power of its own.

For a time, under the decisions of the United States Supreme Court, this was not true. An attempt was made to use the concept of *situs* with respect to both tangible and intangible property for the purpose of limiting the power to tax to a single state. See Farmers L. & T. Co. v. Minnesota, 280 U. S. 204, 50 S. Ct. 98, 74 L. ed. 371, 65 A. L. R. 1000; First Nat. Bank v. Maine, 284 U. S. 312, 52 S. Ct. 174, 76 L. ed. 313, 77 A. L. R. 1401. In the latter case, Mr. Chief Justice Hughes was a member of the majority of the court which adopted this view. See also his concurrence in the dissenting opinions in Wisconsin v. J. C. Penney Co. 311 U. S. 435, 61 S. Ct. 246, 85 L. ed. 267, 130 A. L. R. 1229, and Curry v. McCanless, 307 U. S. 357, 59 S. Ct. 900, 83 L. ed. 1339, 123 A. L. R. 162. Much of his opinion in Johnson Oil Ref. Co. v. Oklahoma ex rel. Mitchell, 290 U. S. 158, 54 S. Ct. 152, 78 L. ed. 238, can be explained on this basis. On this ground, Blackstone v. Miller, 188 U. S. 189, 23 S. Ct. 277, 47 L. ed. 439, was overruled. Farmers L. & T. Co. v. Minnesota, 280 U. S. 204, 209, 50 S. Ct. 98, 74 L. ed. 371, 65 A. L. R. 1000. By this means the court sought to bring about what it thought to be a desirable policy—the avoidance of double taxation. See cases cited *supra;* also Union Refrigerator Transit Co. v. Kentucky, 199 U. S. 194, 26 S. Ct. 36, 50 L. ed. 150, 4 Ann. Cas. 493. But in more recent decisions this attempt to read into the due process clause any such limitation has been definitely rejected as an improper judicial attempt to compel the application of views as to wise legislative policy through the

process of constitutional interpretation. The possibility of taxation of the same property by more than one state is no longer a constitutional objection. Recently, First Nat. Bank v. Maine, 284 U. S. 312, 52 S. Ct. 174, 76 L. ed. 313, 77 A. L. R. 1401, where the contrary view had been adopted, was overruled, and the case of Blackstone v. Miller, 188 U. S. 189, 23 S. Ct. 277, 47 L. ed. 439, restored to good favor. State Tax Comm. v. Aldrich, 316 U. S. 174, 62 S. Ct. 1008, 86 L. ed. 1358, 139 A. L. R. 1436.

We look, therefore, not to whether another state is entitled to tax, but rather to whether the power to do so exists in this state. Property may have a *situs,* if we wish to use that term, in more than one state, depending upon whether the basic considerations are present which give a state the right to tax under the requirements of due process. These considerations have repeatedly been stated to be, first, the sovereign power of the state over the person or property, and, second, the rendering in return of a substantial benefit or protection to the person or property taxed. Thus, in the recent leading case of Curry v. McCanless, 307 U. S. 357, 364, 59 S. Ct. 900, 904, 83 L. ed. 1339, 123 A. L. R. 162, the court said:

"The power of government and its agencies to possess and to exclude others from possessing tangibles, and thus to exclude them from enjoying rights in tangibles located within its territory, affords adequate basis for an exclusive taxing jurisdiction. When we speak of the jurisdiction to tax land or chattels as being exclusively in the state where they are physically located, we mean no more than that the benefit and protection of laws enabling the owner to enjoy the fruits of his ownership and the power to reach effectively the interests protected, for the purpose of subjecting them to payment of a tax, are so narrowly restricted to the state in whose territory the physical property is located as to set practical limits to taxation by others. Other states have been said to be without jurisdiction and so without constitutional power to tax tangibles if, because of their location elsewhere, those states can afford no substantial protection to the rights taxed and can-

not effectively lay hold of any interest in the property in order to compel payment of the tax."

Again, in Wisconsin v. J. C. Penney Co. 311 U. S. 435, 61 S. Ct. 246, 249, 85 L. ed. 267, 130 A. L. R. 1229, the court said:

"A state is free to pursue its own fiscal policies, unembarrassed by the Constitution, if by the practical operation of a tax the state has exerted its power in relation to opportunities which it has given, to protection which it has afforded, to benefits which it has conferred by the fact of being an orderly, civilized society * * * [The] test is whether property was taken without due process of law, or, if paraphrase we must, whether the taxing power exerted by the state bears fiscal relation to protection, opportunities and benefits given by the state. The simple but controlling question is whether the state has given anything for which it can ask return."

See also quotation, *supra,* from Transit Company case, 199 U. S. 202, 26 S. Ct. 36, 50 L. ed. 150, 4 Ann. Cas. 493. See Southern Pacific Co. v. Kentucky, 222 U. S. 63, 32 S. Ct. 13, 56 L. ed. 96.

We need not consider whether all the cases can be logically reconciled with the principles thus laid down. It is sufficient that, particularly in the recent cases, they have been insisted upon and made the criteria for the constitutional basis of the power to tax. It is our duty to follow them.

Applying these principles in this case, we have no difficulty in sustaining the tax of this state upon all the planes owned by defendant. The power of this state over defendant and the property taxed was present. Defendant was incorporated here. Its principal place of business is located in this state, and all the planes at some time or another come within its borders. The benefits conferred upon defendant by the government and laws of this state in relation to all of defendant's planes are equally clear. The policies and decisions made by defendant in connection with the operations of its planes were made here and under the protection and benefit

of the laws of this state. The manner and extent of their operations were determined and directed from this state. Particularly significant is the fact that when planes were in need of major repairs and overhauling the necessary repairing and overhauling were done here. These benefits did not cease the moment the planes crossed the border into another state. They continued and contributed to the successful operation of the planes throughout the course and scope of their operations.

There is, therefore, no violation of due process in the taxation by this state of all the planes. There was a fair basis in the power of this state over defendant and its planes and in the benefits conferred with respect to this property upon which the tax may rest. We hold, therefore, that the tax here in question on all the planes was a valid one.

Our decision does not rest upon any application of the discredited maxim *Mobilia sequuntur personam; immobilia situm. Mobilia non habent sequelam,* nor upon the bare fact that defendant was incorporated here. A more substantial reason for the tax exists. The state is giving a real and substantial return for the tax it seeks to impose. Neither do we question the principle that a specific item of personal property, permanently located in another state, cannot be taxed here. That is not the case before us. We hold only that there is a fair basis upon which this state may impose the tax in question and that any right of another state to impose a similar tax upon some portion of the planes does not adversely affect that basis. It may well be that defendant will be required to pay taxes in other states upon some portion of its planes. If so, it is because, under the principles stated, a fair basis for the tax exists in those states also. In any event, on the facts as they appear before us and under the principles already stated, states other than this one would not appear entitled to tax to any greater extent than the average number of planes within its borders during the tax period. As stated in the concurring opinion of Mr. Justice Frankfurter in State Tax Comm. v.

Aldrich, 316 U. S. 174, 183, 62 S. Ct. 1008, 1013, 86 L. ed. 1358, 139 A. L. R. 1436:

"Modern enterprise often brings different parts of an organic commercial transaction within the taxing power of more than one State, as well as of the Nation. It does so because the transaction in its entirety may receive the benefits of more than one government."

Whether or not it is economically wise or fair to impose the tax herein sustained we are not entitled to consider under the principles already stated. That question is more properly addressed to the legislature, whose prerogative and responsibility it is to enter into such considerations. The power to make a good law of necessity carries with it the power to make an unwise one. "A tax within the lawful power of a state" may not "be judicially stricken down under the due process clause simply because its enforcement may or will result in restricting or even destroying particular occupations or businesses." A. Magnano Co. v. Hamilton, 292 U. S. 40, 44, 54 S. Ct. 599, 601, 78 L. ed. 1109 (citing cases).

Defendant's second objection to the tax is equally without foundation. That the planes were engaged largely in interstate commerce does not deprive this state of the right to impose the tax. Property engaged in the transportation of interstate commerce may be subjected by a state to the usual nondiscriminatory property taxes if jurisdiction to tax otherwise exists. Pullman's Palace Car Co. v. Pennsylvania, 141 U. S. 18, 11 S. Ct. 876, 35 L. ed. 613. See also Johnson Oil Ref. Co. v. Oklahoma ex rel. Mitchell, 290 U. S. 158, 54 S. Ct. 152, 78 L. ed. 238, and cases therein cited.

The provisions of the statutes relating to taxation of personal property are sufficiently broad to include all the planes of defendant. All nonexempt personal property owned by a resident is taxed. See Minn. St. 1941, § 272.01 (Mason St. 1927, § 1974), and Id. § 272.03, subd. 3 (§ 1979). The statutes do not in express terms exclude such property when located outside the state, and

the language of § 272.01 (§ 1974) makes plain enough that the intention was to include it.

The judgment of the lower court is affirmed.

LORING, JUSTICE (dissenting).

I find my views at variance with the conclusion arrived at by the majority. I agree with them that, insofar as tangible personal property is concerned, the doctrine of *mobilia sequuntur* is outworn and discarded. See Union Refrigerator Transit Co. v. Kentucky, 199 U. S. 194, 26 S. Ct. 36, 50 L. ed. 150, 4 Ann. Cas. 493. It follows, of course, as they say, that the place of incorporation of the taxpayer does not control as to such property. This leaves their opinion resting upon the facts that all the planes of defendant at regular times come within the protection of this state, that major repairs are made here, and that the company's offices are here. Does an opinion so grounded harmonize with the principles of due process as developed and announced by the United States Supreme Court?

I think the majority are misled by failing to distinguish between what that court has said in cases involving intangibles and what it has held in those involving tangible property. If the broad expressions used with reference to intangible property such as those used in State Tax Comm. v. Aldrich, 316 U. S. 174, 62 S. Ct. 1008, 86 L. ed. 1358, 139 A. L. R. 1436, cited by the majority, should be applied to tangible property, which was not there under consideration, we should find that the doctrine of *mobilia sequuntur*, which the majority agree is now discarded as to tangible property, would be restored in great measure and made applicable to tangible property as well as to intangibles. It certainly applies only to tangible property when that property has acquired no *situs* whatever for taxation elsewhere. "The arguments in favor of the taxation of intangible property at the domicil of the owner have no application to tangible property." Union Refrigerator Transit Co. v. Kentucky, 199 U. S. 194, 206, 26 S. Ct. 36, 38, 50 L. ed. 150, 4 Ann. Cas. 493.

The Supreme Court has drawn a clear distinction between tangible personal property and intangible property in the application of due process. In Curry v. McCanless, 307 U. S. 357, 365, 59 S. Ct. 900, 905, 83 L. ed. 1339, 123 A. L. R. 162, involving intangibles, Mr. Justice Stone (now Chief Justice), speaking for the court, after discussing the *situs* of tangibles in relation to the taxing power, said:

"Very different considerations, both theoretical and practical, apply to the taxation of intangibles, that is, rights which are not related to physical things. Such rights are but relationships between persons, natural or corporate, which the law recognizes by attaching to them certain sanctions enforceable in courts. The power of government over them and the protection which it gives them cannot be exerted through control of a physical thing. They can be made effective only through control over and protection afforded to those persons whose relationships are the origin of the rights. [Citing cases.] Obviously, as sources of actual or potential wealth—which is an appropriate measure of any tax imposed on ownership or its exercise—they cannot be dissociated from the persons from whose relationships they are derived. These are not in any sense fictions. They are indisputable realities."

Therefore, the broad expressions with reference to the power and jurisdiction to tax contained in cases relative to intangibles, such as State Tax Comm. v. Aldrich, 316 U. S. 174, 62 S. Ct. 1008, 86 L. ed. 1358, 139 A. L. R. 1436, and Curry v. McCanless, 307 U. S. 357, 59 S. Ct. 900, 83 L. ed. 1339, 123 A. L. R. 162, are not applicable to due process as applied to the taxation of tangible property. In the "intangible" cases, the protection of the right of transfer of the evidence of ownership may result, as in State Tax Comm. v. Aldrich, *supra*, in what appears to be double or multiple taxation.

It appears to me that it would be very unfortunate to extend to tangible property theories which have been applied to intangibles only. The Supreme Court has not done so. Should the habit-

ual use and flight of airplanes over the various jurisdictions be held to subject all the taxpayer's planes—not only a proper proportionate share of them—to double or multiple taxation on their full value, it would not only be unjust but would create a situation so burdensome to the airlines as materially to handicap their development and extention, so vital to the national interest. It would likewise be unfortunate for those states imposing the tax on the full value and would doubtless in the end result in congressional authorization of the incorporation of airlines under national law and control of taxation. See Mr. Justice Jackson's dissent, concurred in by Mr. Justice Roberts, in State Tax Comm. v. Aldrich, 316 U. S. 174, 185, 202, 62 S. Ct. 1008, 86 L. ed. 1358, 139 A. L. R. 1436, *supra.*

The problem of taxation of airplanes engaged in scheduled aerial transportation is one of first impression. Airplanes span the continent in a few hours, passing over many jurisdictions in the course of a day's flight. A plane may be in any one state but one or two hours out of the 24, or even only part of an hour. In its very nature, aerial transport is largely interstate. If the operations of an airline were confined to the protection of any single state and to the benefits and opportunities conferred by the laws of that state, such a line would be of little importance in the vast field of air transport. If defendant's operations were confined to the state of Minnesota, doubtless two or three planes would answer its needs. Its ownership of the large number of planes here sought to be taxed is necessitated by its operations in interstate commerce, where it habitually and regularly subjects itself to the protection of other jurisdictions and receives the benefits afforded by the laws of other states, to whose sovereignty it becomes subject, except as it falls within the control of the federal government. In that regard there is no distinction between the benefit and protection afforded by Minnesota and that afforded by Illinois, Wisconsin, North Dakota, Montana, Idaho, or Washington. If the protection and benefit extended by state sov-

ereignty to these aircraft justifies a tax on the full value of all of them because they are continually traversing the air across this state and because at times they all come within its boundaries, then every state traversed by the air route may tax the whole number that flies over such state on the full value. If the tax imposed by Minnesota on the full value of all the planes used by defendant is sustained, it becomes not only a tax imposed for the protection afforded by Minnesota but a tax burdening the entire service of these planes throughout their route. In reality it assesses their owner as if its protection covered the planes throughout their route. Thus, it assesses for protection it does not furnish and which it has no power to furnish.

"The power of taxation, indispensable to the existence of every civilized government, is exercised upon the assumption of an equivalent rendered to the taxpayer in protection of his person and property." Union Refrigerator Transit Co. v. Kentucky, 199 U. S. 194, 202, 26 S. Ct. 36, 37, 50 L. ed. 150, 4 Ann. Cas. 493.

I am in full accord with the view that the law as applied to steamships where the sovereignty of the flag follows the ship throughout the voyage does not apply to airplanes flying scheduled flights over land. Logically, planes are more like fleets of railroad cars being operated in interstate traffic.

Johnson Oil Ref. Co. v. Oklahoma ex rel. Mitchell, 290 U. S. 158, 54 S. Ct. 152, 78 L. ed. 238, was a case where Pawnee county, Oklahoma, under a state statute, sought to tax the entire fleet of the Johnson company's tank cars, which were used mainly in transporting oil from its refinery in Oklahoma to other states. The Johnson company was an Illinois corporation, but its refinery, trackage, and repair facilities were in Oklahoma. Like defendant's planes, the cars were in almost continuous movement and the major share of the time were beyond the boundaries of the state, though they were all marked to be returned to the refinery in Oklahoma, where was located the control and supervision of the cars. Thus we have a situation much like that presented to us in

the case at bar, except that the Johnson company was incorporated in Illinois instead of Oklahoma, a matter which the United States Supreme Court and the majority here seem to regard as immaterial insofar as tangible property is concerned. A stronger feature for the company in the case at bar is that its planes are beyond the state boundaries on regular uniform schedules and routes defined by the Civil Aeronautics Authority. Oklahoma's right to tax all the cars was challenged as a violation of the due process clause of the Fourteenth Amendment. Relating to the jurisdiction to tax, the court in that case, speaking through Mr. Chief Justice Hughes, said (290 U. S. 162, 54 S. Ct. 154, 78 .L. ed. 238):

*"The basis of the jurisdiction is the habitual employment of the property within the State.* By virtue of that employment the property should bear its fair share of the burdens of taxation to which other property within the State is subject. *When a fleet of cars is habitually employed in several States—the individual cars constantly running in and out of each State—it cannot be said that any one of the States is entitled to tax the entire number of cars regardless of their use in the other States."* (Italics supplied.)

True, the Chief Justice, speaking for the court, also said (290 U. S. 161, 54 S. Ct. 153, 78 L. ed. 238):

"Appellant had its domicile in Illinois, and that State had jurisdiction to tax appellant's personal property which had not acquired an actual situs elsewhere. 'The State of origin remains the permanent situs of the property notwithstanding its occasional excursions to foreign parts.'"

True enough, assuming that the property had acquired a *situs* in the domiciliary state, but the statement was obviously not intended to apply if it had not. Union Refrigerator Transit Co. v. Kentucky, 199 U. S. 194, 26 S. Ct. 36, 50 L. ed. 150, 4 Ann. Cas. 493, *supra.* But the situation in the Johnson Oil Co. case, 290 U. S. 158, 54 S. Ct. 152, 78 L. ed. 238, as here, was that the

tangible personal property had acquired *situs* for proportionate taxation elsewhere. In the case at bar, the flights on regular daily schedules throughout the year were not mere (290 U. S. 161, 54 S. Ct. 152, 78 L. ed. 238) "occasional excursions" into other jurisdictions, but the property (290 U. S. 162, 54 S. Ct. 154, 78 L. ed. 238) "habitually used and employed" on such flights within other states acquired a *situs* for proportionate taxation in those states.

As illustrated by the Johnson Oil Co. case, the *situs* in the other states for tax purposes may be proportionate only. It need not be such a *situs* as would confer jurisdiction to tax the full value of all cars which come into the state even when they come in habitual use. It may be a jurisdiction to tax a fair proportion as determined by average presence or other fair method of apportioning the tax. It might, in the case of aircraft, be based upon miles or hours flown in the state in proportion to those flown elsewhere.

I cannot find that the Johnson Oil Co. case has been overruled or qualified insofar as tangible property is concerned, nor do I think it is in conflict with the previous case of People ex rel. N. Y. C. & H. R. R. Co. v. Miller, 202 U. S. 584, 597, 26 S. Ct. 714, 717, 50 L. ed. 1155, where New York's franchise tax, measured by property, was sustained as applied to all the cars of the railroad company. There the court said, speaking of the problem before it:

"In the present case, however, it does not appear that *any specific cars* or *any average of cars* was so continuously in any other State as to be taxable there. *The absences relied on were not in the course of travel upon fixed routes but random excursions of casually chosen cars, determined by the varying orders of particular shippers and the arbitrary convenience of other roads."* (Italics supplied.)

Whatever the actual facts as to car routings may have been, the court in that case viewed the record as showing only "random excursions of casually chosen cars" outside the state. The case was decided on that assumption. That situation is not present in

the case at bar. Here we have air transport planes continuously and habitually used on scheduled flights over fixed routes, much more extensive than through Minnesota, over at least six other states, where they have acquired a *situs* for proportionate taxation by virtue of the protection and benefit of those jurisdictions, which subjects them to taxation in those states. American Refrigerator Transit Co. v. Hall, 174 U. S. 70, 82, 19 S. Ct. 599, 43 L. ed. 899; Johnson Oil Ref. Co. v. Oklahoma ex rel. Mitchell, 290 U. S. 158, 54 S. Ct. 152, 78 L. ed. 238, *supra;* Union Refrigerator Transit Co. v. Lynch, 177 U. S. 149, 20 S. Ct. 631, 44 L. ed. 708.

While neither state nor national constitution contains a specific prohibition against double or multiple taxation as such, obviously the imposition of such a tax may under certain circumstances offend some provision of the fundamental law. Reed v. Bjornson, 191 Minn. 254, 253 N. W. 102. It is to be avoided if reasonably possible. Bemis Bro. Bag Co. v. Wallace, 197 Minn. 216, 228, 266 N. W. 690. "Protection against * * * unjust and oppressive taxation is matter of the greatest moment." Farmers L. & T. Co. v. Minnesota, 280 U. S. 204, 212, 50 S. Ct. 98, 100, 74 L. ed. 371, 65 A. L. R. 1000. Here, quite obviously, it is not only oppressive but burdens interstate commerce. It would not do so if it were confined to Minnesota's proportionate share.

There is no question but that Minnesota may tax its proportionate share of the airplanes here involved; but, as said in Johnson Oil Ref. Co. v. Oklahoma ex rel. Mitchell, 290 U. S. 162, 54 S. Ct. 152, 154, 78 L. ed. 238, the jurisdiction "to tax property of this description must be determined on a basis which is consistent with the like jurisdiction of other States." It is the power of other states to tax due to habitual use and employment of the planes within their boundaries which affects the *situs* of the planes and the right of Minnesota to tax more than its proportionate share. As said in Farmers L. & T. Co. v. Minnesota, 280 U. S. 204, 211, 50 S. Ct. 100, 74 L. ed. 371, 65 A. L. R. 1000, "the right of one State to tax may depend somewhat upon the *power*

of another to do so." Certainly that rule has not been changed as to tangibles, as witness the Johnson Oil Co. case, *supra*. It is the existence of the power to tax, not the exercise of it, that affects the *situs*, Sancho v. Humacao Shipping Corp. (1 Cir.) 108 F. (2d) 157, 160, though in the case at bar all states on defendant's scheduled routes except Idaho have exercised it.

Whether a proportionate tax should be imposed on the theory of miles or hours flown within the state as compared to the total mileage or hours flown, or upon the basis of average number of planes present in the state under normal operating conditions, having in mind that during most of the time, as was the case with the cars in the Johnson Oil Co. case, most of the planes are outside the state, is probably not a problem for this court to determine. It should not, however, distinguish this case from the Johnson Oil Co. case. That the planes come into the state every day or nearly every day does not distinguish it. They are out of the state on flights over other jurisdictions a large proportion of the time. The only difference from the Johnson Oil Co. case is that planes move faster and more frequently than cars. The principle is the same. What this court should say is that the tax may only be imposed by Minnesota upon its proportionate share figured on some reasonable basis, which, primarily, the taxing authorities should first determine.

To summarize:

1. We have a case of a specific tax on tangible personal property, *viz.*, aircraft.
2. Such property is not subject to the rules applied to intangibles.
3. By habitual use and employment on fixed schedules in flights over other states, the aircraft have acquired a *situs* for proportionate taxation in those states.
4. That *situs* must be taken into consideration in determining Minnesota's constitutional power to tax, regardless of the domicile or principal place of business of the taxpayer.

5. Minnesota may tax only proportionate part of the value of the property arrived at on some reasonable basis primarily to be fixed by the taxing authorities.

I think the judgment should be reversed.

GALLAGHER, CHIEF JUSTICE (dissenting).
I concur in the dissent of Mr. Justice Loring.

JULIUS J. OLSON, JUSTICE (dissenting).
I concur in the views of Mr. Justice Loring.

STREISSGUTH, JUSTICE (concurring specially).

The dissenting opinion of Mr. Justice Loring is based principally upon his interpretation of Johnson Oil Ref. Co. v. Oklahoma ex rel. Mitchell, 290 U. S. 158, 54 S. Ct. 152, 78 L. ed. 238. He insists that that case is indistinguishable from the case at bar, notwithstanding that there the state seeking to tax an entire fleet of floating tank cars was not the state of the corporate owner's domicile. To quote from his dissent:

"Thus we have a situation much like that presented to us in the case at bar except that the Johnson company was incorporated in Illinois instead of Oklahoma, a matter which the United States Supreme Court and the majority here seem to regard as immaterial insofar as tangible property is concerned."

But an examination of the opinion of Mr. Chief Justice Hughes establishes the contrary. To quote (290 U. S. 161, 54 S. Ct. 152, 153, 78 L. ed. 238):

"Appellant had its domicile in Illinois and that State had jurisdiction to tax appellant's personal property which had not acquired an actual situs elsewhere. 'The State of origin remains the permanent situs of the property notwithstanding its occasional excursions to foreign parts.' "

In support of this statement, the Chief Justice cites New York ex rel. N. Y. C. & H. R. R. Co. v. Miller, 202 U. S. 584, 26 S. Ct. 714, 50 L. ed. 1155; Southern Pacific Co. v. Kentucky, 222 U. S.

63, 32 S. Ct. 13, 56 L. ed. 96. These cited cases and not the Johnson Oil Co. case are controlling here, as clearly pointed out by Mr. Justice Pirsig in his opinion. Granted that domicile of the corporate owner standing alone will not vest in the domiciliary state the power to tax an entire fleet of airplanes, yet the additional facts that the corporation's principal place of business is in the state, that all of its airplanes come within its borders during the tax year on scheduled trips and for repairs, and that the manner and extent of their operation is determined and directed from the state, supply the additional elements necessary to invest the state with power to tax such planes.

I not only fully but emphatically agree with Mr. Justice Loring that "to subject all the taxpayer's planes * * * to double or multiple taxation * * * would not only be unjust but would create a situation so burdensome to the airlines as materially to handicap their development and extension, so vital to the national interest."

As a court we cannot, however, concern ourselves with policy, a purely legislative question. Our only inquiry is power. It is an uncontroverted doctrine that courts will not consider the justice, wisdom, expediency, propriety, necessity, or policy of tax laws or other legislation. That cardinal principle is the basis of the circumspect avoidance by the judiciary of encroachment upon the exclusive domain of the legislature, a coequal branch of the government. 11 Am. Jur., Constitutional Law, pp. 802-3-4, 900, §§ 136-138, 198; 1 Cooley, Const. Limitations (8 ed.) 346; State v. Fairmont Creamery Co. 162 Minn. 146, 202 N. W. 714, 42 A. L. R. 548; Champion v. Ames (lottery case) 188 U. S. 321, 363, 23 S. Ct. 321, 47 L. ed. 492, 504; McCray v. United States, 195 U. S. 27, 24 S. Ct. 769, 49 L. ed. 78, 1 Ann. Cas. 561.

As recently as November 9, 1942, in the case of Wickard v. Filburn, 317 U. S. 111, 129, 63 S. Ct. 82, 91, 87 L. ed. . . . ., Mr. Justice Jackson reiterated this rule in the following language:

"An Act of Congress is not to be refused application by the

courts as arbitrary and capricious and forbidden by the Due Process Clause merely because it is deemed in a particular case to work an inequitable result."

Mr. Justice Pirsig has convincingly demonstrated that this state's power to tax defendant's entire fleet of airplanes exists so long as no part of it is permanently located in another state. I therefore concur in his conclusion, though reluctantly and not without suggesting that, for reasons so forcibly pointed out by Mr. Justice Loring, remedial legislation to correct any possible unfairness to defendant and other companies similarly situated be enacted without delay lest congress assert its undisputed power and authorize "the incorporation of airlines under national law and control of taxation."

