**UNITED STATES v. ONE PITCAIRN BIPLANE, REGISTRATION NO. NC–5062, ENGINE NO. AD–3285.**

District Court, W. D. New York.
April 22, 1935.

George L. Grobe, U. S. Atty., of Buffalo, N. Y. (by Robert M. Hitchcock, Asst. U. S. Atty., of New York City), for the United States.

Michael J. Maher, of Buffalo, N. Y., for respondent.

KNIGHT, District Judge.

The facts are not in controversy.

On April 1, 1933, a Pitcairn biplane, Registration No. NC–5062, Engine No.

AD-8285, left the airport in St. Catherines, Canada, and flew to Youngstown, Ohio, with a quantity of smuggled liquor. On the flight to Youngstown, with the liquor aboard, the plane crossed the international boundary and proceeded over a portion of the Western District of New York, over a portion of the state of Pennsylvania, and thence into the state of Ohio. No report was made by the pilot or the owner of said airplane to any customs officer or airport of entry, nor was any stop made at the nearest airport of entry, which, in this case, was Buffalo. On May 22, 1933, Charles Ross, the owner of the plane, directed the pilot, Theodore Jones, to make another trip to St. Catherines for another load of liquor. Difficulties arose at the St. Catherines airport, however, and the plane proceeded to the Niagara Falls, N. Y., airport and remained over night. The following day, May 23, 1933, the pilot landed the plane in Canada and began loading liquor thereon. On the same day the Canadian police seized the plane and placed the pilot Jones under arrest. Later, on June 1, 1933, the respondent plane was being transported from Canada across the bridge at Niagara Falls, N. Y., on a wagon drawn by a team of horses, was seized by United States customs officials operating from the Western District of New York, and an action of forfeiture of the plane brought under sections 482 and 483 of title 19, USCA.

The question here is the right of the United States District Court for the Western District of New York to entertain this action, inasmuch as the plane did not land in said district during the transportation of smuggled goods; and also as to the applicability of sections 482 and 483 of title 19 to aircraft.

Counsel for libelant contends that when the respondent plane crossed the international boundary into the United States that constituted an entry into the country with smuggled goods; that the plane flying over the Western District of New York constituted an entry into that district, giving this court jurisdiction over the plane and the right to seize and libel the same if found within the district. Counsel has not cited any cases directly on this point, but points out by analogy that if the goods had come by land over the international boundary through a part of New York State, through a part of Pennsylvania, into Ohio,

this court would have had jurisdiction; the only difference here being that the vehicle traveled by air instead of land.

Counsel for respondent insists that, inasmuch as the airplane landed in Ohio with the smuggled liquor, the place of violation was there and nowhere else, and this court has no jurisdiction over the seized airplane; that a libel action, if any, can only be brought in the district of Ohio where the plane landed. Counsel states that there are numerous decisions tending to uphold this position, but cites only United States v. Batre (C. C. A.) 69 F.(2d) 673, where a plane, carrying intoxicating liquor, was flown from Mexico to Florence, Ariz., where it landed and was seized by customs officials. The situation is not entirely similar to the present one. The plane was seized at the place of landing, not at some place over which it had flown with the smuggled goods, and there is no question as to the court's jurisdiction in the Batre Case.

While there do not seem to be any decisions holding directly on this question, yet in section 176 (a), title 49, USCA, the United States claims jurisdiction over the airspace over all its lands and waters. It is a well-settled principle that the owner of property has control of the airspace above his property as well as the land below the surface. This has been illustrated in numerous decisions in state courts on questions of nuisance—telephone and telegraph wires strung over the property of another and overhanging eaves. In Butler v. Frontier Tel. Co., 186 N. Y. 486, 79 N. E. 716, 718, 11 L. R. A. (N. S.) 920, 116 Am. St. Rep. 563, 9 Ann. Cas. 858, the Court of Appeals of New York said: " * * * The law regards the empty space as if it were a solid, inseparable from the soil, and protects it from hostile occupation accordingly."

That the states consider that they have jurisdiction of the airspace over the land within their boundaries is shown by the fact that twelve states have adopted the uniform law on aviation, section 7 of which provides that: "All crimes, torts and other wrongs committed by or against an aeronaut or passenger while in flight over this State shall be governed by the laws of this State; and the question whether damage occasioned by or to an aircraft while in flight over this State constitutes a tort, crime or other wrong by or against the owner of such aircraft, shall be deter-

mined by the laws of this State." United States Aviation Reports 1928, p. 474.

It is admitted that the respondent airplane smuggled merchandise into the United States. Therefore, when the airplane, carrying smuggled merchandise, crossed the international boundary and proceeded over the Western District of New York, it entered said district and gave this court jurisdiction for the purpose of this action.

Counsel for respondent further contends that sections 482 and 483 of title 19, USCA, are inapplicable to aircraft because in section 1401 of title 19, in the definitions of the terms "vessel" and "vehicle," aircraft is specifically excluded. However, the first sentence of section 1401 reads: "When used in this subtitle or in Part I of Subtitle III." Both of these subtitles are part of the Tariff Act of 1930, and it does not follow that the exclusion applies to vessels and vehicles as used in sections 482 and 483.

Counsel for respondent also contends that, according to United States v. Batre (C. C. A.) 69 F.(2d) 673, 675, in the event of seizure of a plane for illegally transporting intoxicating liquors, forfeiture should not be asked, but only a penalty. However, in that case the court said: "Ordinarily, the word 'penalty' is regarded as being substantially synonymous with the word 'forfeiture,' both indicating a punishment, and no reason here appears for making a distinction." And further: "While the statute does not in terms declare a forfeiture, still the enforcement of the penalty lien, in effect, operates to bring about such a result. If this was not intended the remedy must be sought from Congress, not the courts."

Inasmuch as the first and second causes of action have been sustained, it will be unnecessary to proceed with the fourth, fifth, and sixth causes of action—the third cause having been dismissed upon motion of counsel for the government at the trial—for in each of them a penalty of $500 is asked as a lien against the plane; and, since the plane itself is forfeited under the first and second causes of action, it will be unnecessary to discuss penalties which would constitute a lien against the plane.

It is believed that in this case this court has jurisdiction, and the airplane should be forfeited to the government as requested.