Preston W. GRACE and Charlotte B. Grace, his wife, Plaintiffs,

v.

John D. MacARTHUR, Ronnie Smith, and Bankers Life & Casualty Co., Defendants.

Civ. No. B-306.

United States District Court
E. D. Arkansas, N. D.
Feb. 16, 1959.

M. F. Highsmith, Batesville, Ark., Mehaffy, Smith & Williams, Robert V. Light, Little Rock, Ark., for plaintiffs.

Wright, Harrison, Lindsey & Upton, Edward L. Wright, Little Rock, Ark., for defendant, Ronnie Smith.

Owens, McHaney, Lofton & McHaney, James M. McHaney, Little Rock, Ark., for defendant, John D. MacArthur.

HENLEY, District Judge.

On motions of the defendants, John D. MacArthur and Ronnie Smith to quash service of summons.

This is an action brought by Preston W. Grace and Charlotte B. Grace, his wife, citizens of Arkansas, against three defendants, referred to collectively as "Bankers Group", for damages for alleged breach of a written contract for the exchange of certain real and personal property, or, in the alternative, for specific performance of said contract and certain alleged amendments thereto. The defendant, Bankers Life & Casualty Co., is an Illinois corporation, authorized to do and doing an insurance business in the State of Arkansas. The defendant, John D. MacArthur, is a citizen of Illinois, and is the controlling stockholder, chairman of the board and president of the defendant corporation. The defendant, Ronnie Smith, is a citizen of Tennessee. The amount in controversy is far in excess of the statutory minimum. As stated, the three defendants are referred to collectively as "Bankers Group", and it is alleged that the defendant, Ronnie Smith, was at all times here pertinent the duly appointed, qualified and acting agent of Bankers Group, and "of the three entities comprising" that group. In other words, it is alleged that he was acting for himself and also for the corporation and for the defendant, MacArthur.

The complaint was filed on July 21, 1958, and summons was issued on the same day. Jurisdiction of the corporate defendant was obtained by service on the Arkansas State Insurance Commissioner, which service is not challenged here. Service on MacArthur was attempted under the provisions of Act 347 of the General Assembly of Arkansas for 1947 (Ark.Stats., Section 27-340) which authorizes service on the Secretary of State for the State of Arkansas with respect to any "non-resident person, firm, partnership, general or limited, or any corporation not qualified under the Constitution, and Laws of this State as to doing business herein" who has done any business or performed any character of work or service in the State. The Marshal's return as to Smith recites that the writ came to hand on July 21, 1958, and that on the same day he served the same "by personally delivering to him a copy of this writ, together with a copy of the Complaint, on the Braniff Airplane, Flight No. 337, non-stop flight from Memphis, Tenn. to Dallas, Texas, said copy being delivered to him at 5:16 P.M. at which time the said airplane was in the Eastern District of Arkansas and directly above Pine Bluff, Arkansas, in said District."

The motion to quash filed by MacArthur alleges that he "has not done any business or performed any character of work or service in the State of Arkansas and has not appointed the Secretary of State of the State of Arkansas as an Agent for acceptance of service of process upon him", and that "there has been no lawful service of process upon (him) and the Court is without jurisdiction over his person". Smith's motion asserts that "he has not been properly served with process in this action *within the State of Arkansas*, and this Court is without jurisdiction over the person of said defendant". (Emphasis supplied.) Said motions have been submitted upon written briefs.

Taking up first the motion of Ronnie Smith, it is noted that he does not question the recitals in the Marshal's return to the effect that he was served with a copy of the summons and of the complaint while he was a passenger on a Braniff airplane at a time when said air-

craft was physically above the City of Pine Bluff in the Eastern District of Arkansas. His position is simply that at the time he was served, he was not within the "territorial limits" of the State of Arkansas, as required by Rule 4(f) of the Federal Rules of Civil Procedure, 28 U.S. C.A.[1]

In their briefs in connection with Smith's motion counsel on both sides state that they have been unable to find any case dealing with the specific problem in hand. The Court likewise has been unable to find such a case. Nonetheless, the Court is persuaded that a person moving in interstate commerce across the State of Arkansas in a regular commercial aircraft, flying in the regular navigable airspace above the State, is within the "territorial limits" of the State and is amenable to service under the provisions of Rule 4(f), supra.

In approaching this question it is well to keep in mind that we are not here concerned with any problem of conflicting regulatory provisions of State and federal governments such as were involved in Alleghany Airlines, Inc., v. Village of Cedarhurst, D.C.N.Y., 132 F.Supp. 871, affirmed, 2 Cir., 238 F.2d 812, or with any problem of the taxable situs of aircraft such as confronted the Court in Braniff Airways v. Nebraska State Board of Equalization and Assessment, 347 U.S. 590, 74 S.Ct. 757, 98 L.Ed. 967, or with any claim of surface ownership extending upward under the common law "ad coelum" doctrine such as was presented in Causby v. United States, 60 F.Supp. 751, 104 Ct.Cl. 342, reversed United States v. Causby, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206, and in Antonik v. Chamberlain, 81 Ohio App. 465, 78 N.E. 2d 752. The narrow question for us to decide is whether for service purposes, the passengers on a commercial aircraft are within the territorial limits of the

State over which the plane happens to be flying at a particular time.

Apart from any supposed effect of the Air Commerce Act of 1926, 49 U.S.C.A. § 171 et seq., as amended by the Civil Aeronautics Act of 1938, 49 U.S. C.A. § 401 et seq., it is clear that an aircraft flying over a State is within that State and is subject to its jurisdiction. For example, in the leading case of Smith v. New England Aircraft Co., Inc., 270 Mass. 511, 170 N.E. 385, 389, 69 A.L.R. 300, 308, the Court said:

"* * * It is essential to the safety of sovereign States that they possess jurisdiction to control the air space above their territories. It seems to us to rest on the obvious practical necessity of self-protection. Every government completely sovereign in character must possess power to prevent from entering its confines those whom it determines to be undesirable. That power extends to the exclusion from the air of all hostile persons or demonstrations, and to the regulation of passage through the air of all persons in the interests of the public welfare and the safety of those on the face of the earth. This jurisdiction was vested in this Commonwealth when it became a sovereign State on its separation from Great Britain. * * *"

The Smith case was cited with approval in State v. Northwest Airlines, 213 Minn. 395, 7 N.W.2d 691, wherein it was said; "The sovereign power and jurisdiction of a state is not limited to the ground. An airplane in the air over the territory of a state is within the state and subject to its sovereign power." 7 N.W.2d at page 694. Similarly, in Erickson v. King, 218 Minn. 98, 15 N.W. 2d 201, 204, the same court held that a State's power to control air traffic was

---

1. "All process other than a subpoena may be served anywhere within the territorial limits of the state in which the district court is held and, when a statute of the United States so provides, beyond the territorial limits of that state. * * *"

Since this is a simple diversity case, there is no federal statute which would extend the permissible limits of service beyond the confines of the State of Arkansas.

subject only to the constitutional powers of Congress over interstate commerce, post roads, national defense, and the general welfare, and that apart from those particular powers the State has "not only the jurisdiction to control air traffic above the territory within its boundary, but the responsibility of a sovereign to protect such traffic and its passengers and freight." 15 N.W.2d at page 204. To the same effect see also People v. Katz, 140 Misc. 46, 249 N.Y.S. 719.

In United States v. One Pitcairn Biplane, D.C.N.Y., 11 F.Supp. 24, 25, the facts were that an aircraft had taken on a load of liquor in Canada and had flown non-stop to a point in Ohio passing en route over a portion of the Western District of New York. On a subsequent flight the plane landed in the district just mentioned and was there seized by the customs officials on account of its previous smuggling operation. The question presented was whether the previous flight of the plane while in transit from Canada to Ohio "constituted an entry" into the Western District of New York so as to give the federal courts of that district jurisdiction with respect to the libel. The Court answered that question in the affirmative, employing the following language: "It is admitted that the respondent airplane smuggled merchandise into the United States. Therefore, when the airplane, carrying smuggled merchandise, crossed the international boundary and proceeded over the Western District of New York, it entered said district and gave this court jurisdiction for the purpose of this action." 11 F. Supp. at page 26.

Moreover, a number of the States have adopted the Uniform Aeronautics Act, which declares, among other things, that sovereignty in the airspace rests with the State, except where granted to and assumed by the United States. Arkansas has adopted a version of that Act which now appears in Ark.Stats., Sections 74–101 et seq. Section 74–111 provides that all crimes, torts, and other wrongs committed by or against a pilot or passengers while in flight over the lands and waters of the State shall be governed by its laws, and that the question of whether damage occasioned by or to an aircraft while over this State constitutes a tort, crime or other wrong shall be determined by Arkansas law. And Sections 74–112 and 74–113 provide, respectively, that contractual relations entered into upon an aircraft over the State shall be governed by the laws applicable to similar relations entered into on the lands of the State, and that the liability of the owner or pilot of an aircraft carrying passengers for injury or death to such passengers shall be determined by the rules of law applicable to torts on the lands or waters of this State arising out of similar relationships.

Obviously, the only rational and legal basis upon which State jurisdiction in the respects above mentioned could be asserted is that an aircraft flying over the State and its passengers are within the borders or limits of the State. That such assertions of jurisdiction are valid where they do not conflict with controlling federal legislation has been recognized by the Supreme Court of the United States in Braniff Airlines v. Nebraska Board of Equalization and Assessment, supra.

█ It is true that in the Air Commerce Act of 1926 Congress declared that: "The United States of America is declared to possess and exercise complete and exclusive national sovereignty in the air space above the United States, including the air space above all inland waters and the air space above those portions of the adjacent marginal high seas, bays, and lakes, over which by international law or treaty or convention the United States exercises national jurisdiction. Aircraft a part of the armed forces of any foreign nation shall not be navigated in the United States, including the Canal Zone, except in accordance with an authorization granted by the Secretary of State." 49 U.S.C.A. § 176(a). And it is also true that by the Civil Aeronautics Act of 1938 Congress has largely, if not entirely, preempted the field of regulation of air traffic. See

Alleghany Airlines, Inc., v. Village of Cedarhurst, supra.

■ It does not follow, however, from Congressional declarations of National sovereignty over the navigable airspace of this country, or from Congressional regulation of air traffic, that the States have been denuded of all of their sovereignty and jurisdiction with respect to such airspace or that the same has been excluded from their boundaries or limits. That the contrary is true, is shown by the opinion in the Braniff case, supra, wherein the Court, after quoting from 49 U.S. C.A. § 176(a), set forth above, went on to say:

" * * * The 1938 Act also declares 'a public right of freedom of transit' for air commerce in the navigable air space to exist for any citizen of the United States. 52 Stat. 980, § 3, 49 U.S.C. § 403, 49 U.S.C.A. § 403.

"The provision pertinent to sovereignty over the navigable air space in the Air Commerce Act of 1926 was an assertion of exclusive national sovereignty. The convention between the United States and other nations respecting international civil aviation ratified August 6, 1946, 61 Stat. 1180, accords. The Act, however, did not expressly exclude the sovereign powers of the states. H.R.Rep. No. 572, 69th Cong., 1st Sess., p. 10. The Civil Aeronautics Act of 1938 gives no support to a different view. After the enactment of the Air Commerce Act, more than twenty states adopted the Uniform Aeronautics Act. It had three provisions indicating that the states did not consider their sovereignty affected by the National Act except to the extent that the states had ceded that sovereignty by constitutional grant. The recommendation of the National Conference of Commissioners on Uniform State Laws to the states to enact the Act was withdrawn in 1943. Where adopted, however, it continues in effect. See United States v. Praylou, 4 Cir., 208 F.2d 291. * * *

"These Federal Acts regulating air commerce are bottomed on the commerce power of Congress, not on national ownership of the navigable air space, as distinguished from sovereignty. In reporting the bill which became the Air Commerce Act, it was said:

" ' The declaration of what constitutes navigable air space is an exercise of the same source of power, the interstate commerce clause, as that under which Congress has long declared in many acts what constitutes navigable or non-navigable waters. The public right of flight in the navigable air space owes its source to the same constitutional basis which, under decisions of the Supreme Court, has given rise to a public easement of navigation in the navigable waters of the United States, regardless of the ownership of the adjacent or subjacent soil.' H.R.Rep. No. 572, 69th Cong. 1st Sess., p. 10.

"The commerce power, since Gibbons v. Ogden, 9 Wheat. 1, 193, 6 L.Ed. 23, has comprehended navigation of streams. Its breadth covers all commercial intercourse. But the federal commerce power over navigable streams does not prevent state action consistent with that power. Gilman v. Philadelphia, 3 Wall. 713, 729, 18 L.Ed. 96. Since, over streams, Congress acts by virtue of the commerce power, the sovereignty of the state is not impaired. State of Oklahoma v. Guy F. Atkinson Co., 313 U.S. 508, 534, 61 S.Ct. 1050, 1063, 85 L.Ed. 1487. The title to the beds and the banks are in the states and the riparian owners, subject to the federal power over navigation. Federal regulation of interstate land and water carriers under the commerce power has not been deemed to deny all state power to tax the property of such carriers. We conclude that existent federal air-carrier reg-

ulation does not preclude the Nebraska tax challenged here." 347 U.S. at pages 595–597, 74 S.Ct. at page 760.

██ In view of the foregoing, it is concluded that at the time the Marshal served the summons on the defendant, Smith, the plane and its passengers were within the "territorial limits" of the State of Arkansas, as that term is used in Rule 4(f). Hence, Smith's motion to quash will be denied. The result here reached seems to be just, equitable and practical. It cannot seriously be contended that a person moving in interstate commerce is on that account exempt from service of process while in transit, and we think it makes no practical difference whether he is traveling at the time on a plane, or on a bus or train, or in his own car. True, if he is going by plane the duration of his presence in the State will probably be much shorter than if he were availing himself of some other means of transportation, but that is a difference of degree only, not of principle.

It may be conceded, perhaps, that a time may come, and may not be far distant, when commercial aircraft will fly at altitudes so high that it would be unrealistic to consider them as being within the territorial limits of the United States or of any particular State while flying at such altitudes. But no such situation is here presented. We have an ordinary commercial aircraft, flying on an ordinary commercial flight in the ordinary navigable and navigated airspace of 1958.

Passing now to MacArthur's motion, an examination of his brief reveals that said motion is based upon a number of propositions, namely:

1. That the contract in suit was completed in Illinois, and that Act 347 of 1947 is not applicable;

2. That the cause of action alleged in the complaint did not accrue from the negotiation or the making of the alleged contract, and that the statute therefore is inapplicable;

3. That a single isolated transaction, such as is here involved, does not constitute "doing business" or "performing work or services" in Arkansas within the meaning of the statute;

4. That, with respect to venue, Act 347, if applied to actions *ex contractu*, is unconstitutional as being discriminatory against non-residents.

██ While the questions presented by this motion may well be serious ones, it is not deemed desirable to pass upon them at this stage of the proceedings. Rather, ruling on said motion to quash should be reserved until the trial, without prejudice to movant's right to renew in his answer his contentions relative to personal jurisdiction over him. See Rule 12(b) and (d), F.R.Civ.P. 28 U.S.C.A. In this connection, even if it be assumed that one or more of his contentions is valid, it is plain that to grant his motion would not dispose of the case, nor, in view of his connection with the corporate defendant, which is such that he will in all probability have to appear and testify at the trial, would an order sustaining his motion achieve any substantial saving in time, effort and expense, either in preparing the case for trial or in the trial. In addition, it would appear that the only basis upon which this court could find that MacArthur had done any business or performed any work or services in Arkansas would be the proposition, advanced by the plaintiffs, that at all pertinent times the defendant, Smith, was the agent of MacArthur.

The issue of the existence and extent of Smith's agency for the other defendants involves disputed factual questions, as all parties recognize; and it appears from the pleadings that those questions go not only to the matter of jurisdiction but in part to the ultimate merits of the case as well. Moreover, should MacArthur's motion be granted, and should it be later determined on appeal that such action was erroneous, the whole case might have to be tried again in order to determine his personal liability, if any. On the other hand, the action that we are

taking will not prejudice MacArthur with respect to his jurisdictional contentions. When the case is fully developed on the merits, the questions presented by the instant motion may well appear in clearer focus, and some of them, particularly the constitutional question, may not survive.

It is, therefore, by the Court considered, ordered and adjudged that the motion of the defendant, Ronnie Smith, to quash service of summons upon him be, and the same hereby is, denied.

Further ordered that ruling on the motion of John D. MacArthur to quash service of summons upon him be, and the same hereby is, reserved until the trial.

Further ordered that both of the above-named defendants file answers to the complaint within ten days after receipt by them of copies of this memorandum and order.