789 F.2d 1534
 CERTAIN BRITISH UNDERWRITERS AT LLOYDS OF LONDON, ENGLAND,
etc., et al., Plaintiffs-Appellants,
v.
JET CHARTER SERVICE, INC., Defendant-Appellee,
Aero Service International, Inc., Defendant/Counterclaimant-Appellee.
 No. 85-5274.
 United States Court of Appeals,
Eleventh Circuit.
 May 27, 1986.
 
 Thornton, David & Murray, P.A., J. Thompson Thornton, Miami, Fla., for plaintiffs-appellants.
 
 
 1
 Kathleen M. O'Connor, Thornton, David & Murray, Miami, Fla., for Certain British Underwriters at Lloyds of London, England.
 
 
 2
 William E. Sadowski, Ackerman, Senterfitt & Eidson, Miami, Fla., for Aero Service Intern., Inc.
 
 
 3
 Robert G. David, Jr., Miami, Fla., for Jet Charter Service, Inc.
 
 
 4
 Appeal from the United States District Court for the Southern District of Florida.
 
 
 5
 Before GODBOLD, Chief Judge, FAY, Circuit Judge, and PECK*, Senior Circuit Judge.
 
 JOHN W. PECK, Senior Circuit Judge:
 
 6
 Appellants, Certain British Underwriters at Lloyds of London ("Underwriters"), brought this action for a declaratory judgment against their insured, Aero Service International, Inc. ("Aero Service") and Jet Charter Service, Inc. ("Jet Charter"), owner of an aircraft damaged at Aero Service's repair facility. Underwriters sought a determination that an insurance policy subscribed to by Underwriters did not provide coverage for the damage to Jet Charter's aircraft while it was being repaired by Aero Service. Aero Service and Jet Charter counterclaimed for coverage under the insurance contract for the damage to Jet Charter's aircraft. The trial court granted Aero Service's motion for summary judgment. This appeal ensued.
 
 
 7
 Aero Service is an aviation repair facility located at Miami International Airport. In August 1982, Jet Charter delivered a Boeing 707 aircraft to Aero Service for maintenance. The aircraft slipped off its jacks during a weight and balance check and sustained severe structural damage. At the time of this incident a policy entitled "Airport Owners and Operators Liability Insurance" issued by Underwriters to Aero Service was in effect. Aero Service filed a claim under this policy for the damage to Jet Charter's airplane. Underwriters rejected the claim on the basis that an airplane was not a "vehicle" such as would bring the aircraft within an exception to an exclusion from coverage. The instant action ensued.
 
 
 8
 In order to determine whether the district court correctly granted summary judgment to the appellees, we must turn to the insurance contract. It is a well settled rule of Florida law that parol or extrinsic evidence may not be introduced for the purpose of construing written contract terms which are plain and unambiguous. Garcia v. The Queen, Ltd., 487 F.2d 625, 630 (5th Cir.1973). The Schedule attached to the policy states:
 
 The risk and sum insured hereunder
 
 9
 Risk: Legal Liability arising out of the Assureds [sic] operation as FAA Aircraft Repair Station, Flight Crew Training School, Dispatch/Flight Following Center and Cargo Handling Agency.
 
 
 10
 Sum Insured: $5,000,000 Single Limit BI/PD any one accident.
 
 
 11
 The policy itself, a form contract supplied by Underwriters, is entitled "Airport Owners and Operators Liability Insurance." The policy is composed of three sections, plus a list of exclusions, a definitions section, and a list of general conditions. On the policy issued to Aero Service, Sections 2 and 3 and the list of exclusions are stamped "THIS CLAUSE VOID." Thus, only Section 1, Definitions, and General Conditions are the operative portions of the contract.
 
 Section 1 provides coverage for:
 Bodily injury or property damage
 
 12
 (a) in or about the premises specified in the Schedule, as a direct result of the services granted by the Assured
 
 
 13
 (b) elsewhere in the course of any work or of the performance of any duties carried out by the Assured or his employees in connection with the business or operations
 
 
 14
 caused by the fault or negligence of the Assured or any of his employees engaged in the Assured's business or by any defect in the Assured's premises, ways, works, machinery or plant used in the Assured's business.
 
 
 15
 Section 1 includes the following exclusions:
 
 
 16
 1. Loss of or damage to property owned or occupied by or in the care, custody or control of the Assured or of any servant of the Assured, but this exclusion shall be deemed not to apply to vehicles that are not the property of the Assured whilst on the premises specified in the Schedule.
 
 
 17
 2. Bodily injury or property damage caused by
 
 
 18
 (a) any mechanically propelled vehicle which the Assured may cause or permit any other person to use on the road in such a manner as to render them responsible for insurance under any domestic or international law appertaining to road traffic, or where no such law exists, whilst such vehicle is on any public highway.
 
 
 19
 (b) any Ships, Vessels, Craft or Aircraft owned, chartered, used or operated by or on account of the Assured, but this exclusion shall be deemed not to apply to aircraft owned by others which are on the ground and for which indemnity is otherwise granted under Section 2 of this Policy, whether such Section is insured.
 
 
 20
 Section 2 of the policy, which is stamped "void" and thus does not apply to Aero Service, provides for coverage of "Loss of or damage to Aircraft or Aircraft equipment, not the property of the Assured, whilst on the ground in the care, custody or control of the Assured."
 
 
 21
 Nowhere in the policy is the word "vehicle" defined. It is the position of the appellees that the term "vehicles" as used in the exception to the first exclusion of Sec. 1 applies to aircraft. Consequently, appellees argue that the exclusion does not apply to aircraft not the property of Aero Services but on its premises and under its care, custody or control. Under appellees' interpretation, the damage to the ill-fated Boeing 707 would be covered by the contract. Underwriters, on the other hand, contends that the exclusion is applicable because the term "vehicle," when read in the context of the entire policy, is not ambiguous and does not apply to aircraft. In the alternative, Underwriters maintains that if an ambiguity exists, it is latent and extrinsic evidence is admissible to show the intent of the parties. Landis v. Mears, 329 So.2d 323 (Fla.Dist.App.Ct.1976).
 
 
 22
 In support of its contention that the term "vehicles" is not ambiguous, Underwriters points to the second exclusion of Sec. 1. This exclusion specifically excludes from coverage "bodily injury or property damage caused by any mechanically propelled vehicle which the insured may cause or permit any other person to use on the road...." The second part of the exclusion applies to "any Ships, Vessels, Craft or Aircraft owned, chartered, used or operated by or on account of the Assured...." Underwriters submits that if "vehicle" includes aircraft, as the appellees maintain, then the second half of the exclusion specifically enumerating "Ships, Vessels, Craft or Aircraft" would be superfluous.
 
 
 23
 As appellee Aero Service notes, when a policy provision is not defined, common everyday usage determines its meaning. Security Insurance Company of Hartford v. Commercial Credit Equipment Corp., 399 So.2d 31 (Fla.Dist.Ct.App.1981). Accordingly, we address the question of whether the common, everyday meaning of "vehicle" includes aircraft within its scope. Black's Law Dictionary defines "vehicle" as [t]hat in or on which persons, goods, etc. may be carried from one place to another, especially along the ground.... Term refers to every device in, upon or by which a person or property is or may be transported upon a highway." Black's Law Dictionary 1393 (5th Ed.1979). Webster's Dictionary defines "vehicle" as "a means of carrying or transporting something;" examples of usage include "aerial vehicles such as airplanes" and "space vehicle." Webster's Third New International Dictionary 2538 (1961).
 
 
 24
 In McBoyle v. United States, 283 U.S. 25, 51 S.Ct. 340, 75 L.Ed. 816 (1931), Justice Holmes stated that "in everyday speech 'vehicle' calls up a picture of a thing moving on land." In McReynolds v. Municipal Court of City of Ottuma, 207 N.W.2d 792 (Iowa 1973), the Iowa Supreme Court found that the word "vehicle" has come to be applied to aircraft since the time of McBoyle in 1931. The court commented that frequent reference is commonly made in connection with space exploration to "space vehicles." We note that just as in the usage examples from Webster's Third quoted above, the court has included an adjective with "vehicle" when referring to aircraft, suggesting that "vehicle" standing alone is not sufficient to connote aircraft.
 
 
 25
 We find Justice Reynoldson's dissenting opinion in McReynolds to be persuasive, and we therefore quote extensively:
 
 
 26
 The difference between the etymological meaning and the man-on-the-street concept of "vehicle" has been recognized by almost all modern-day court decisions interpreting that word. (citations omitted)
 
 
 27
 The general holding is thus distilled in the annotation found at 165 A.L.R. 916:
 
 
 28
 "Although the result is always contingent on the particular wording involved, it has been almost invariably held, in the construction of statutes and regulations, that airplanes are not within the terms 'vehicles,' 'motor vehicles,' etc."
 
 
 29
 Other supportive statements are found in the following authorities: 8 Am.Jur.2d, Aviation Sec. 20, at p. 638 ("An Airplane is in a class by itself. It has usually been held, in the absence of any express provision on the subject calling for a different conclusion, not to be within the terms 'vehicle,' 'motor vehicle,' 'vessel,' or the like."); Ballentine's Law Dictionary 1334 (3rd ed. 1969), ("The word [vehicle] is commonly understood as something which moves or runs on the land, not something that flies in the air, although etymologically the term might be considered as broad enough to cover a conveyance propelled in the air."); 91 C.J.S., Vehicle, at p. 806 ("[I]n everyday speech 'vehicle' calls up the picture of a thing moving on land, and, accordingly, the term ordinarily is not applied to an aircraft * * *."); 2 Funk & Wagnalls New Standard Dictionary of the English Language 2637 (1940) ("vehicle * * *, That in or on which anything is or may be carried; especially, a contrivance with wheels or runners for carrying something * * *; specif., in law, any artificial contrivance used or capable of being used as a means of transportation on land.").
 
 
 30
 The single supportive case relied on by the majority (United States v. One Pitcairn Biplane, 11 F.Supp. 24 [W.D.N.Y.1935], from the lowest federal court, has been cited only three times in its 38-year existence. It was cited in a dictum in South Mississippi Airways v. Chicago & South. Airlines, 200 Miss. 329, 26 So.2d 455 (1946), which held the Mississippi statutes had not recognized air transportation as falling within the jurisdiction of the state's public service commission. It appears in Grace v. MacArthur, 170 F.Supp. 442 (E.D.Ark.1959) on an entirely unrelated point. Finally, it was referred to in the annotation, 165 A.L.R. 916, 918, as "Apparently the only case in which an airplane was considered to be a 'vehicle' * * *."
 
 
 31
 207 N.W.2d at 799.
 
 
 32
 Based on the above analysis, we conclude that an aircraft is not a vehicle as the latter term is commonly and ordinarily used. Florida case law supports our conclusion. In Gibbs v. Mayo, 81 So.2d 739 (Fla.1955) (en banc), the defendant had been charged with unlawfully breaking and entering a motor vehicle. The court, in determining the ordinary meaning of motor vehicle, stated:A motor vehicle is such a vehicle which is self-propelled. Under this definition undoubtedly all automobiles or trucks are motor vehicles, but it is just as clear that all motor vehicles are not automobiles or trucks. For example, farm tractors, bulldozers, motorcycles, motor scooters, electric street cars, and road rollers are within the definition of a motor vehicle. In its broadest sense, an airplane, a self-propelled boat, and even an elevator may be a motor vehicle. But clearly none of these kinds of motor vehicles, in the common usage and ordinary meaning of the words, is a vehicle within the terms of those described in our statutes....
 
 
 33
 Id. at 740.
 
 
 34
 Appellee Jet Charter cites Florida's Insurance Code, codified at Fla.Stat. Sec. 624.605, which defines "vehicle insurance" as "insurance against loss of or damage to any land vehicle or aircraft or any draft or riding animal...." Thus, Jet Charter asserts, the Florida legislature intended "vehicle" in terms of insurance coverage to include aircraft. Other Florida statutes, however, support the position that an aircraft is not ordinarily encompassed within the meaning of "vehicle." At Fla.Stat. Sec. 806.01(3), "structure" is defined as "any building of any kind, any enclosed area with a roof over it, and any vehicle, vessel or aircraft." Florida Statute Sec. 932.702(3) states that it is unlawful "[t]o use any vessel, motor vehicle or aircraft to facilitate the transportation ... of any contraband article." See also Fla.Stat. Sec. 943.43(1); Fla.Stat. Sec. 455.06(1). If an aircraft were considered to be included within the meaning of vehicle, the Florida legislature did not need to include "aircraft" in any of the above statutes.
 
 
 35
 In conclusion, we hold that the district court erred in finding that the insurance contract provided coverage for damages to the Jet Charter aircraft, because such aircraft was not a "vehicle" within the meaning of the exception to the exclusionary clause. This determination makes an examination of the remaining issues unnecessary, and the order of the district court is REVERSED and the cause is REMANDED with instructions to grant appellants' motion for summary judgment.
 
 GODBOLD, Chief Judge, dissenting:
 
 36
 This case should be sent back to the district court to be unraveled. Ultimately it may require certification to the Supreme Court of Florida.
 
 
 37
 Lloyds asserted estoppel as an affirmative defense to Jet Charter's counterclaim seeking a declaratory judgment of coverage. In support thereof Lloyds sought to introduce, and the court excluded, the following evidence. In December 1981 a Boeing 707 in the hands of Aero Service for maintenance was damaged when an Aero Service employee drove a tractor into it. Aero Service notified the insurer of the damage, and it was investigated. On March 29, 1982 Lloyds' agent wrote Aero Service that coverage was denied because the policy provided airport premises liability coverage but excluded "loss of or damage to property in the care, custody or control of the assured." This would seem to be a commonsense result--that premises liability was not intended to cover damage to multimillion dollar aircraft in the care and control of the insured while being maintained by it--and the agent's letter to Aero Service denying liability explained this.
 
 
 38
 The tendered evidence showed that Aero Service did not further assert that there was coverage but instead contacted the agent and requested a quotation for insurance that would provide coverage for aircraft in Aero Service's care, custody and control. The agent responded offering such coverage for a premium of $15,446, approximately five times that being paid under the existent policy ($3,095.15). Aero Service did not reply.
 
 
 39
 On May 24 the policy was renewed. One of the clauses stamped "void" in the policy describes the coverage that Aero Service was offered and did not buy: "Loss of or damage to Aircraft or Aircraft equipment, not the property of the Assured, whilst on the ground in the care, custody or control of the Assured."Approximately three months thereafter the same Boeing 707, again in Aero Service's hands for maintenance, slipped off the jacks and was damaged. For this incident Aero Service claims the benefit of the precise coverage that it was told that it lacked and that it did not buy when offered.
 
 
 40
 The tendered evidence should have been received. Unless Aero Service can offer something else, Lloyds would be entitled to judgment on estoppel grounds. If other evidence refutes that tendered by Lloyds, and the case is not decided on estoppel grounds, the next threshold to traverse is determination of the type of coverage extended by the policy (without addressing the exclusions). This is not wholly free from doubt. The risk is defined as "Legal Liability arising out of the Assureds operation as FAA Aircraft Repair Station (and other descriptive language not relevant)." Arguably the risk of "operation" of a repair station is broader than premises liability. These are unanswered questions since this court's decision is based upon an exclusion from coverage (whatever the coverage may be). If the meaning of "vehicle" has to be reached, whether an airplane is a vehicle under Florida law for purposes of insurance law in general and this policy in particular is an issue that should be certified to the Supreme Court of Florida. Insurance law is a field in which the state has a particular interest, and it is entitled to define its own terms. I would not take bets on which way the Florida Supreme Court would go. It seems to me that the term "vehicle" in this policy is not so unambiguous that its meaning can be determined without extrinsic evidence. Whatever court decides the matter needs all the help it can get. The ambiguity is demonstrated by the opinion of this court, which finds a single and certain meaning by reference to, inter alia, a law dictionary that goes one way and a standard dictionary that goes the other, an opinion of the United States Supreme Court rendered in 1931 when airplanes had minor significance, a dissenting opinion from the Iowa Supreme Court, and Florida statutes that point both ways.
 
 
 
 *
 Honorable John W. Peck U.S. Circuit Judge for the Sixth Circuit, sitting by designation