Adrienne J. BLOSS, f/k/a Adrienne
J. Swanson,

Respondent,

v.

The UNIVERSITY OF MINNESOTA
BOARD OF REGENTS,
Appellant.

No. CX–98–1787.

Court of Appeals of Minnesota.

April 6, 1999.

Robert Bennett, Eric Hageman, Bennett, Brown & McNeil, P.A., Minneapolis, MN (for respondent).

Charles T. Patterson, Heideman, Redmond, Fredregill, Patterson, Plaza & Dykstra, L.L.P., Sioux City, IA (for respondent).

Clifford M. Greene, Andrew M. Luger, Jeanette M. Bazis, Greene Espel, P.L.L.P., Minneapolis, MN (for appellant).

Considered and decided by TOUSSAINT, Chief Judge, LANSING, Judge, and FOLEY, Judge.*

## OPINION

LANSING, Judge

The University of Minnesota appeals the denial of statutory immunity for sexual-assault injuries of a student enrolled in a cultural immersion program in Cuernavaca, Mexico. Because the University's challenged conduct required the balancing of educational, economic, political, and social considerations, it was acting within the scope of its discretionary function, and we reverse.

## FACTS

During participation in a University-sponsored cultural immersion program in Cuernavaca, Mexico, a student traveling to meet friends for a social evening was raped at knifepoint by a taxi driver. The student was participating in the University's Spanish in Cuernavaca Program at the Cemanahuac Educational Community. The University contracts with Cemanahuac to instruct the students and administer the program. The student was housed with a host family that lived approximately 2.5 miles from Cemanahuac, 30 minutes by bus or ten minutes by car. She took the bus to and from school and to attend social and cultural events. She and her roommate had taken a taxi to school

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

approximately three times when they were running late.

On the night of the assault, the student left her host-family home on her own and hailed a taxi about one-half block down the street. She was planning to meet friends at the host home of several fellow students and then to go to a bar or restaurant. The taxi driver told her the back door was broken and that she should get in the front seat. The student got in the front seat. En route to her friends' home, the driver pulled over to the side of the road and raped her.

The University offers more than 175 programs for students to fulfill academic requirements with overseas study. Approximately 1,000 University students annually earn credits by studying in more than 60 different countries. The University offers two types of overseas study experiences: programs in which students live in dormitories, and cultural immersion programs in which students live with and among the people of the host country, with host families or in apartments.

The Global Campus is the University's primary programming, advising, and administrative office for the study-abroad programs. Program decisions are made by working with on-site organizations and the relevant academic departments. The Global Campus staff has discretion in making program arrangements. Cemanahuac has a list of criteria used in the selection of host families. Students are permitted to select another host family if they were unhappy with the housing. The University has no written guidelines governing the distance of host families from schools or transportation for the program.

Cemanahuac provides instruction in the Spanish language and Mexican history and arranges for family homestays for each of the participating students. Students' host-family homes are located throughout the city and are either within walking distance from the school or located on a bus line. The students attend mandatory orientation sessions at which they receive explicit oral and written warnings relating to safety in Cuernavaca. The Cuernavaca program is designed to allow students to travel independently on the weekends and for an additional week during the program. In the 18–year history of the program that preceded the assault in this case, the University knew of no student or tourist who had been raped.

The student sued the University for negligence in its failure to secure housing closer to the Cemanahuac campus, failure to provide transportation to and from campus, failure to adequately warn about risks, and failure to protect students from foreseeable harm. The University moved to dismiss, arguing that it was statutorily immune from suit; that the claims were barred by the students signing an "Acceptance, Release, and Waiver" document; that the University did not have a legal duty to warn the students about the criminal acts of third parties; that failure to warn is not actionable when an attack is not preceded by a threat; and that the student had acknowledged that she was given specific warnings, which, had she heeded them, would have prevented the attack.

The district court denied summary judgment, holding that the University's challenged conduct was ministerial and not subject to discretionary immunity and that the Acceptance, Release, and Waiver was overbroad. The University appealed the denial of its motion for summary judgment on immunity and requested discretionary review on the remaining issues. A special-term panel denied discretionary review of the related issues. *See Bloss v. Univ. of Minn. Bd. of Regents,* No. CX–98–1787 (Minn.App. Oct.20, 1998) (order).

### ISSUES

I. Is the University statutorily immune from liability for claims relating to housing and transportation decisions in its Spanish in Cuernavaca program?

II. Is statutory immunity limited to *written* policy decisions?

### ANALYSIS

### I

The University of Minnesota is generally subject to liability for its torts under circumstances in which the University,

"if a private person, would be liable to the claimant." Minn.Stat. §§ 3.736, subd. 1 (1998) (waiving governmental immunity for state and its employees); 3.732, subd. 1(1) (1998) (specifically including University within definition of "state" for purposes of statutory immunity). But if a claim is for "a loss caused by the performance or failure to perform a discretionary duty, whether or not the discretion is abused," the University has statutory immunity. Minn.Stat. § 3.736, subd. 3(b) (1998); *Janklow v. Minnesota Bd. of Exam'rs,* 552 N.W.2d 711, 716 (Minn.1996) (clarifying that state's "discretionary function" immunity will be called "statutory" immunity). The statutory immunity exception is narrowly construed and aimed at preventing courts from passing judgment on "policy decisions entrusted to coordinate branches of government." *Holmquist v. State,* 425 N.W.2d 230, 231 (Minn.1988). Whether an immunity defense applies is a question of law, subject to independent review. *Johnson v. State,* 553 N.W.2d 40, 45 (Minn.1996). The burden is on the party asserting an immunity defense to demonstrate that it is entitled to immunity. *Rehn v. Fischley,* 557 N.W.2d 328, 333 (Minn.1997).

The University maintains that the conduct at issue in all of the student's claims is the decision to sponsor study-abroad programs that offer students the opportunity to immerse themselves in local culture by living with host families instead of dormitories and by using the available local transportation. The student counters that the challenge is not to the program itself but to the operational acts that are the day-to-day implementation of the policy, unprotected by statutory immunity.

■ The distinction between "planning level" activity (protected by statutory immunity) and "operational level" activity (not protected by statutory immunity) was fashioned as an aid to determine what constitutes a discretionary decision. *Holmquist,* 425 N.W.2d at 232. The framework impedes analysis, however, when it is envisioned as a funnel-shaped structure with a horizontal line dividing "higher level" decision-making from "lower level" decision-making. *See Berkovitz by Berkovitz v. United States,* 486 U.S. 531,

536, 108 S.Ct. 1954, 1958, 100 L.Ed.2d 531 (1988) (fact that determination is made at relatively low level does not prevent application of discretionary immunity). Whether consequences of a planning decision are immune from liability depends on whether the consequential conduct itself involves the balancing of public policy considerations in the formulation of the policy. *Pletan v. Gaines,* 494 N.W.2d 38, 44 (Minn.1992). "Sometimes the implementation of a policy itself requires policymaking." *Holmquist,* 425 N.W.2d at 234 (citation omitted).

■ The lens through which we analyze each immunity claim is the precise alleged conduct giving rise to the plaintiff's claim. Once we identify this conduct, we ask whether it legitimately involves the balancing of public policy considerations. *See Nusbaum v. Blue Earth County,* 422 N.W.2d 713, 722 (Minn.1988) (first step in statutory immunity analysis is to identify precise governmental conduct in question).

The conduct specifically identified in the student's complaint is (1) "failure to secure student housing closer to Cemanahuac"; (2) "failure to provide safe transportation to and from Cemanahuac"; (3) "failure to warn about various serious risks including the use of taxicabs in Cuernavaca"; and (4) "failure to take other reasonable measures to protect its students from foreseeable harm while studying away from home in a foreign country." We analyze each claim in turn.

*Failure to secure student housing closer to Cemanahuac*

■ The complaint's allegation that the University was negligent in failing to secure housing closer to the Cemanahuac education center does not squarely connect with the apparent causation factors. The University moved for summary judgment in the district court on nonimmunity grounds that could have provided a more direct focus for review. *See Gleason v. Metropolitan Council Transit Operations,* 563 N.W.2d 309, 315 n. 1 (Minn. App.1997) (encouraging motion practice to test sufficiency of claim in order to preserve narrow operation of immunity), *aff'd in part,* 582 N.W.2d 216 (Minn.1998). Our rejection of the University's request for discretionary

review on the alternative bases suggests too superficial an analysis of whether the rulings involved interdependent issues, but we are limited, at this juncture, to a review of only the immunity issues.

■ To the extent the student challenges the University's use of host families to provide housing, her claim is aimed at policy-making conduct and barred by statutory immunity. A university's decision whether to provide housing is generally viewed as a discretionary decision that involves cost balancing, housing market considerations, and social and educational consequences. *Nero v. Kansas State Univ.*, 253 Kan. 567, 861 P.2d 768, 779 (1993) (university's decision to build, maintain, and operate housing units discretionary).

The decision on how to provide housing in an overseas cultural immersion program involves even more balancing factors than providing adjoining campus housing. The University's decision to offer a cultural immersion program in Cuernavaca that housed students with host families as part of the cultural immersion requires a balancing of academic, financial, political, economic, and social considerations. The University must allocate financial resources among housing, academic, and transportation needs; consider student safety considerations; evaluate the social and political climate of host countries; determine housing availability; identify students' interests and goals; and evaluate the academic effects of cross-cultural interaction.

We can, of course, envision circumstances involving safety of students, particularly school children on school premises, that might not allow an exercise of "discretionary" duty. *See S.W. v. Spring Lake Park Sch. Dist. No. 16*, 580 N.W.2d 19, 23 (Minn. 1998) (denying discretionary immunity when no requirement of identification or monitoring of visitors on premises of school complex that included high school, elementary school, and day-care center); *Nusbaum*, 422 N.W.2d at 723 (when challenged activity involved only safety considerations rather than public policy, rationale for immunity does not apply and government is liable); *see also* W. Page Keeton et al., *Prosser and Keeton on the*

*Law of Torts* § 131, at 1048 (5th ed.1984) (negligent supervision of playground or school usually involves no issue of discretion). The history of the Cuernavaca program indicates no danger so great that safety could not be balanced against other policy considerations. Nothing in the facts or allegations suggests that the middle-class neighborhood in which the student was housed had a high crime rate, and no student in the 18–year history of the program had been the victim of a rape.

We can also envision specific allegations that might be aimed at the selection of an individual host family that would not be protected by statutory immunity. *See Nero*, 861 P.2d at 779 (university not statutorily immune from landlord's duty to use reasonable care to protect tenants from foreseeable harm in college dormitory). But the student has not alleged a cause of action in negligence based on selecting the particular host family and has alleged no injury from any other aspect of the housing selection except its distance from the education center. None of the conduct addressed in the complaint is predicated on nonimmune implementation that would involve applying established policy to a particular fact situation. The conduct identified by the complaint reduces either to the decision to use host families, the presentation of program information, or the method of providing transportation, which we turn to next.

*Failure to provide safe transportation to and from Cemanahuac*

■ The University has demonstrated that the Spanish in Cuernavaca program, designed as a cultural immersion program, incorporated independent travel decisions and required students to select their own means of transportation to and from Cemanahuac.

The decision of whether or not to provide transportation to students involves the balancing of competing public policy considerations. It is a discretionary decision that involves the weighing of cost, safety, and its impact on the students' cross-cultural interaction. *See Pletan*, 494 N.W.2d at 44 (school district's formulation of transporta-

tion policy is a multifactored policy decision including safety, cost, and the educational goal of instilling responsibility in the elementary students). *Holmquist,* 425 N.W.2d at 233 (crucial question is whether conduct involves balancing of public policy considerations in formulation of policy).

The considerations involved in formulating a transportation policy in the context of a cultural immersion program implicate even more factors. Providing transportation to individual students in a foreign country for educational classes and recreational activities would involve substantial costs and create a structure contrary to the specific educational goals of cultural immersion. Statutory immunity protects the University's decision not to provide transportation for the students in the program.

*Failure to warn about various risks including the use of taxis in Cuernavaca*

■■■ The indisputed evidence shows that the program materials, the release form and program orientation, and Cemanahuac's orientation materials all warn students about their safety. The student testified that she received explicit oral and written warnings relating to safety in Cuernavaca at mandatory orientation sessions prior to the start of the program. The warnings included specific admonitions that it was dangerous for women to go out alone at night, that she should call for a taxi at night rather than hail a taxi on the street, and that women should never sit in the front seat of taxis. These warnings specifically addressed the circumstances under which the student sustained her injuries. Because it is not disputed that the University provided these warnings, the conduct at issue in the complaint is the University's failure to provide more extensive warnings about potential dangers.

The University demonstrated that at its orientation session it provides information about academic, health, travel, financial, safety, and social issues. To rebalance the extent of the warnings would represent judicial interference with executive policy-making and affect the program's design, a University decision protected by statutory immunity. *See Rasivong v. Lakewood Community College,* 504 N.W.2d 778, 782 (Minn.App.1993)

(level of security provided by college for community celebration was discretionary decision protected by statutory immunity), *review denied* (Minn. Oct. 19, 1993).

*Failure to take other reasonable measures to protect students from foreseeable harm while studying away from home in a foreign country*

■■■ Although the University has the burden to demonstrate that immunity applies, a nonspecific allegation that does not reasonably identify what conduct is at issue impedes immunity analysis. Beyond protecting a governmental entity's discretionary decision, immunity also protects a governmental entity from having to defend claims. *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985) (immunity entitles a governmental entity to *"immunity from suit* rather than a mere defense to liability") (emphasis in original); *Anderson v. City of Hopkins,* 393 N.W.2d 363, 364 (Minn.1986) (immunity to suit effectively lost if case erroneously permitted to go to trial). Because no specific act or failure to act is identified, we must conclude that what is at issue is the same core conduct relating to decisions on housing, transportation, or additional warnings that has already been determined to come within the scope of the University's immunity.

The litigation appears to be premised on a belief that the University is the guarantor of the student's safety. Unfortunately, this is neither physically possible nor realistic. The student has suffered a grave injury, but the gravity does not create liability. The University is liable for its torts only to the same degree that a private person would be in the same circumstances. Moreover, it is protected from litigation that seeks to interfere with its discretionary functions in designing and constructing an academic program.

## II

At the hearing on the summary judgment motion and in the response brief on appeal, the student has relied primarily on an argument that statutory immunity cannot attach to a policy that is unwritten. We think this argument misconstrues the statute by substituting a common but nonessential attribute

of discretionary duty for the function itself. *See* Minn.Stat. § 3.736, subd. 3(b) (state not liable for loss caused by performance or by failure to perform discretionary duty).

Nothing in the statute or the cases interpreting statutory immunity indicates that a governmental unit's statutory immunity is contingent on whether a policy has been reduced to writing. *See Nusbaum*, 422 N.W.2d at 722 n. 6 (unnecessary to show decision precipitating conduct when challenged government conduct facially involves balancing of policy objectives). Nor do we accept the argument, advanced by the student, that *S.W. v. Spring Lake Park School District No. 16* requires that a policy must be in writing in order to be protected by statutory immunity. *See S.W.*, 580 N.W.2d at 23 (finding immunity did not apply when school had no policy, either written or unwritten).

■ The absence of a written policy may make it more difficult for a governmental entity to sustain its burden of proof, but a written policy is not essential. *See Steinke v. City of Andover*, 525 N.W.2d 173, 175 (Minn. 1994) (government must produce evidence that conduct was of policy-making nature); *Holmquist*, 425 N.W.2d at 234 (adoption of standards or regulations almost inevitably balances policy considerations). The record in this case sufficiently demonstrates that the University, expressing its policies through a combination of written and unwritten policies, balanced multiple competing factors in designing the cultural immersion Spanish in Cuernavaca program.

## DECISION

The University demonstrated that it is entitled to statutory immunity in the exercise of its discretionary decision to create a cultural immersion program that placed students in host homes, relied on available public transportation, and provided a variety of student warnings and information. We reverse the district court's denial of statutory immunity for the claims against the University set forth in the complaint.

**Reversed.**