**Richard K. McNAMARA, et al., Petitioners, Appellants,**

v.

**OFFICE OF STRATEGIC AND LONG RANGE PLANNING, et al., Respondents,**

**Town of Forest Lake, Appellant,**

**City of Forest Lake, Respondent,**

**Resident Annexation Petitioners (One Great Forest Lake), Respondent,**

**Independent School District No. 831, et al., Respondents Below.**

No. C0–00–1704.

Court of Appeals of Minnesota.

May 22, 2001.

Review Denied Aug. 22, 2001.

Kevin Kenneth Shoeberg, Kevin K. Shoeberg, P.A., Woodbury, MN, (for appellants McNamara, et al. and Town of Forest Lake).

Mike Hatch, Attorney General, Kenneth E. Raschke, Jr., Assistant Attorney General, St. Paul, MN, (for respondent Office of Strategic and Long Range Planning and Office of Administrative Hearings).

David K. Hebert, Hebert, Welch & Humphreys, P.A., Forest Lake, MN, (for respondent city of Forest Lake).

Dale G. Swanson, Forest Lake, MN, (for respondent Resident Annexation Petitioners (One Great Forest Lake)).

Considered and decided by TOUSSAINT, Chief Judge, AMUNDSON, and HUSPENI, Judges.

## OPINION

DORIS O. HUSPENI, Judge *

Appellants, several residents of the Town of Forest Lake, challenge a district court order affirming an administrative law judge order that annexed the Town of Forest Lake to the City of Forest Lake. Appellants contend that (1) the ALJ did not have jurisdiction over the annexation proceedings; (2) the order for annexation was contrary to the law and evidence; (3) the annexation unconstitutionally violated the voting rights of the residents of the

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

newly annexed area; and (4) the annexation resulted in an unconstitutional taxation of the residents of the newly annexed area. Because we conclude that the decision to annex the Town of Forest Lake to the City of Forest Lake was authorized by law, was supported by substantial evidence, and did not violate the constitutional rights of the residents of the newly annexed area, we affirm.

## FACTS

The Forest Lake community (Community) consists of two local government units, the City of Forest Lake (City) and the Town of Forest Lake (Town). The community is located within the seven-county metropolitan area, specifically Washington County, and has been the beneficiary of much development, most of which is attributable to the city. Because the town substantially surrounds the city and because they share the body of water known as Forest Lake, the town and city cooperate on decisions that will affect the community.

The key difference between the city and the town is their present forms of government. The town form of government is appropriate for rural areas and emphasizes citizen participation in the governmental decision-making process. The city form of government is appropriate for urban and suburban areas as it provides much broader taxing, regulatory, and economic development powers.

The town has considered incorporating into a city in order to address concerns related to urbanization and economic development. Because the town wishes to remain autonomous, it has filed numerous petitions for incorporation into a municipal entity to be known as the City of Forest Shores. However, some of the residents

of the town as well as the Metropolitan Council believe that the town should obtain the benefits of the city form of government by merging with the city, either through annexation or consolidation. These divided beliefs have resulted in numerous proceedings on annexation or incorporation since 1960, before the Minnesota Municipal Board (MMB), the Washington County District Court, and this court. The present appeal is the result of competing petitions for annexation to the city and incorporation of the town.

In April 1999, two petitions for annexation were filed with the MMB. One petition was submitted by Independent School District No. 831 for the annexation of a limited portion of township property to be used in the construction of a new junior high school. The other was a petition of approximately 200 residents of the town (respondent One Great Forest Lake) seeking annexation of the entire town to the city. A short time later, the town board filed a petition for incorporation from a township to a city. The petitions were consolidated and a hearing was scheduled with the MMB.[1]

Before the hearing was held, the Minnesota legislature passed Minn.Stat. § 414.11 (Supp.1999). That statute terminated the MMB effective June 1, 1999, and transferred its authority to the Minnesota Office of Strategic and Long Range Planning (respondent Planning Office). The Commissioner of Administration then directed the Office of Administrative Hearings (OAH) to assume the work of the planning office and assigned an Administrative Law Judge (ALJ) to conduct administrative hearings and issue an order on the consolidated petitions.

1. This appeal involves appellant residents of the town and the town itself. The school district has not appealed. Only annexation of the entire township is now at issue; no challenge is raised here to annexation of property for the construction of the junior high school.

A town resident, Frederic Knaak, petitioned this court for a writ of prohibition, claiming that the ALJ did not have jurisdiction to conduct the scheduled hearing. In November 1999, this court ruled that the ALJ and the OAH did have authority under Minn.Stat. § 16B.037 (1998).

The administrative hearing commenced in December 1999 and the ALJ issued an order in March 2000, denying incorporation of the town into a separate municipal entity and granting annexation of the town to the city, for the creation of a single municipal entity. The order made annexation effective May 16, 2000.

Subsequently, appellants sought review by the district court. The town sought an injunction staying the effects of the annexation. The district court stayed annexation and issued a temporary injunction pending its decision on the appeal. In September 2000, the district court affirmed the ALJ's decision and retroactively annexed the town to the city.

Elections for city council were held on November 7, 2000. Because the district court lifted the injunction after the last day for filing for candidacy, no residents of the newly annexed area appeared on the electoral ballot. The electoral ballot, however, allowed for write-in candidates. The present city council does not contain any representatives from the newly annexed area.

## ISSUES

I. Do appellants have standing to challenge the annexation?

2. We note that respondents failed to file a notice of review on the issue of whether appellants have standing to challenge the annexation. While we normally will not address an issue not appealed, "a party's standing to bring a claim may be raised at any time."

II. Did the ALJ have jurisdiction to hear the consolidated annexation and incorporation petitions?

III. Does the law and evidence support the ALJ's decision?

IV. Did annexation unconstitutionally interfere with the voting rights of the residents of the newly annexed area?

V. Do taxes imposed by the City deprive residents of the newly annexed area of their constitutional due process rights?

## ANALYSIS

### I.

■ Respondent One Great Forest Lake (OGFL) argues initially that appellants do not have standing to seek appellate review of the decision of the ALJ.[2] *See* Minn.Stat. § 414.07, subd. 2 (2000) (permitting persons aggrieved by a decision to appeal an annexation); Minn. R. 6000.0100, subp. 2 (1999) (defining who may be considered a party for purposes of contesting an annexation). We disagree.

■ It is well established in the law that a town and township residents have standing to challenge the validity of an annexation because they will be affected either favorably or adversely by any decision to annex the township to an abutting city. *See, e.g., Town of Stillwater v. Minnesota Mun. Comm'n,* 300 Minn. 211, 219 N.W.2d 82, 87 (1974) (recognizing that a township has a right to, and an interest in, challenging an order for annexation but that the right of appeal is limited to review under section 414.07); *City of Glencoe v. Beneke,* 288 Minn. 190, 194, 179 N.W.2d 279, 281

*Lucio v. School Bd. of Indep. Sch. Dist. No. 625,* 574 N.W.2d 737, 739 n. 2 (Minn.App. 1998) (citation omitted), *review denied* (Minn. Apr. 30, 1998). Therefore, we reach the merits.

(1970) (stating that appellant-township residents had the right to challenge the merits of the annexation); *see also City of Lake Elmo v. City of Oakdale,* 468 N.W.2d 575, 577 (Minn.App.1991) (stating that section 414.07 provided authority to review an appeal for concurrent attachment and annexation of residential properties from one city to another brought by property owners). Therefore, this argument is without merit.

## II.

■ Appellants argue that the ALJ, as appointed by the planning office, did not have the proper statutory authority to consider the annexation and incorporation petitions. We disagree. This court in a previous order determined that the ALJ did have jurisdiction to hear and render a decision on the annexation and incorporation petitions involved here. *In re Knaak v. State,* No. C7–99–1871 (Minn. App. Nov. 24, 1999). That holding became the law of the case and is no longer subject to challenge by appellants. *Mattson v. Underwriters at Lloyds of London,* 414 N.W.2d 717, 719–20 (Minn.1987) (refusing appellate review because doctrine of law of the case precludes relitigation of an issue previously decided on appeal in the same case).

■ Further, we find no merit in appellants' additional claim that the ALJ lacked jurisdiction to proceed because the petition for annexation was allegedly fraudulent. The validity of the petition was not challenged until September 7, 2000, well after an ALJ had issued an order for annexation. Therefore, any challenge must be deemed to have been waived. *Meyer v. Village of Waite Park,* 278 Minn. 20, 25–26, 152 N.W.2d 778, 781 (1967) (holding that challenge to annexation petition was not valid where substantial action had already been taken in furtherance of the

annexation); *see also Crystal Green v. City of Crystal,* 421 N.W.2d 393, 394 (Minn.App.1988) (holding that challenge to validity of dedication fees was waived where the challenger failed to challenge the fees prior to final action on plat application), *review denied* (Minn. May 25, 1988). Accordingly, the ALJ maintained jurisdiction over the annexation and incorporation.

## III.

Appellants next argue that the ALJ's decision, which (1) denied the town's application for incorporation into a separate municipal entity and (2) granted the annexation petition, annexing the town to the city, was unsupported by the evidence and based on an erroneous application of the law. The Minnesota legislature has provided a set of nearly identical factors to be considered when reviewing a petition for either incorporation or annexation. Minn. Stat. §§ 414.02, subd. 3, .031, subd. 4 (2000). After reviewing the factors, incorporation or annexation may be ordered if it is in the best interests of the subject area. Minn.Stat. §§ 414.02, subd. 3(m), .031, subd. 4(n).

■ Once the order for annexation or incorporation has been made, the decision enjoys a presumption of correctness. *Town of Forest Lake v. Minnesota Mun. Bd.,* 497 N.W.2d 289, 291 (Minn.App.1993), *review denied* (Minn. Apr. 29, 1993). Therefore, on review, we will not interfere with the decision unless the decision is either based on an erroneous theory of law or is not supported by substantial evidence in the record. *Id.; see also Township of Thomastown v. City of Staples,* 323 N.W.2d 742, 744 (Minn.1982) (reviewing court may not substitute its decision for that of the agency).

## A. Theory of Law Supporting Annexation

■ Appellants argue that the ALJ proceeded on an erroneous theory of law when permitting annexation, despite the lack of a written plan of the services the city planned to offer to residents of the newly annexed area. Minn.Stat. § 414.031, subd. 4(i), requires an annexation order to consider the "[p]lans and programs by the annexing municipality for providing needed governmental services to the subject area." It is undisputed here that the city did not submit a written document that formalized its plans for providing services to the newly annexed area. Therefore, the issue is whether the lack of a written plan for future services precludes annexation.

While it may be typical for a municipality to have written plans related to a proposed annexation, neither the statute nor caselaw appears to require a municipality to submit a formal, written plan. In fact, it is generally recognized that plans and policies may exist despite the fact that they have not been reduced to writing. *See Bloss v. University of Minn. Bd. of Regents,* 590 N.W.2d 661, 666–67 (Minn. App.1999) (holding that the application of statutory immunity is not contingent on whether a policy has been reduced to writing). Therefore, we conclude that the decision of the ALJ to permit annexation was not based on an erroneous application of the law.

Furthermore, a review of the evidence in the record clearly demonstrates that these two local government units had already established sophisticated plans and programs that enabled them to harmoniously provide governmental services to the Forest Lake community, now and well into the future. First, at the direction of the Metropolitan Council, the town's comprehensive plan was prepared so that it would be compatible with the city's comprehensive plan and would not preclude a joint plan with the city at a later time. In addition, the town and the city have generally agreed to restrict the most intensive development and to foster creation of a community center to an area near the lake, within the city. Because the town already had a comprehensive plan and land use controls in place that were compatible with the city's, the city planned only to hire planning consultants to review the plans and controls for uniformity.

Second, the city staff are not unfamiliar with the town's operation or needs. The present city administrator of the city, Charles Robinson, was the administrator of the town from 1977 to 1994. As the township administrator, Robinson was the finance officer and zoning administrator of the town. As the city administrator, Robinson aided in outlining the various services that would be provided to the town and the method for consolidating the two entities. Those services included: (1) the city furnishing at least three police officers to the town's department and establishing 24–hour police coverage for the entire community; (2) consolidating the administrative offices of both entities and providing administrative services; (3) hiring consultants to assist with consolidation of financial planning and budgeting; and (4) furnishing fully-treated and softened water to the high school, new junior high school, and a proposed subdivision to be built in the township. Finally, the city intended to seek a grant from the Minnesota Board of Government Innovation and Cooperation to assist in consolidation.

Third, the town and city have established plans for providing various community services. The city and town have already developed a school system to meet the needs of the community at large. Involvement in school and youth activities is

not dependent on residence within either the town or the city. The city and town plan celebrations jointly. Recreational facilities are financed by community-wide efforts. The Restorative Justice Program, Theft Awareness Program, and Police Explorer Group are provided on a community-wide basis. Community facilities are not dependent upon residence. Additionally, fire services are provided on a community-wide basis.

Finally, the city and town have previously sponsored studies that analyzed consolidation of the two entities. A study through the University of Minnesota Humphrey Institute gathered information and prepared a report analyzing how the two entities should operate in order to effectively govern the entire community. Another study on facilitating a merger was conducted by the Minnesota Extension Service and paid for jointly by the town and the city. This study identified specific actions to be taken by elected officials, established a strategy for land use, and projected budgets. Following these studies, the township board and the city council held joint meetings to discuss the results. Given the enormous investment of time, energy, good faith, and financial resources expended in developing compatible land use controls, joint powers agreements, and a unified community, the inevitable conclusion is that the city did have in existence plans relating to consolidation of the two entities. To require the city to prepare a separate written plan for this annexation proceeding would not only result in duplication of efforts but in additional and unwarranted expenditure of municipal funds.

Appellants also argue that the ALJ erroneously included agricultural preserve property in the annexed property. This type of protected property may not be annexed. *See* Minn.Stat. § 40A.121 (2000) (agricultural property is given special protection from assessments for public improvements and may not be annexed unless it meets certain exceptions). We do not address this issue, however, because it was not argued before the ALJ. *Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988) (refusing to consider legal theories or arguments not previously raised). Even if we were to consider the merits of this claim, the claim would fail. Minn.Stat. § 40A.121, subd. 3, provides an exception, allowing for the annexation of agricultural property where, as here, the agricultural property will be surrounded by lands within the new municipality. Accordingly, the ALJ's decision was not based on an erroneous theory of law for this reason.

**B. Substantial Evidence**

■ Appellants argue that there is not substantial evidence in the record to support the ALJ's decision to order annexation as opposed to incorporation of the town as a separate municipal entity. Substantial evidence is defined as:

(1) more than a scintilla of evidence;

(2) such that a reasonable mind might accept it as adequate to support a conclusion; or

(3) more than "some evidence" and more than "any evidence."

*State by McClure v. Sports & Health Club, Inc.,* 370 N.W.2d 844, 848–49 (Minn.1985) (citation omitted).

It would be difficult, after review of a 70–page order, including 222 findings of fact, 17 conclusions of law, and a 26–page memorandum encompassing a balancing of the town's interests between annexation and incorporation, to conclude that the ALJ's findings were not sufficient or substantial. The town and city agree that the town requires the benefits of being incorporated as a city and is rapidly becoming urban or suburban in character. Therefore, none of the evidence presented by the

town questioned the need for a change from a town form of government to a city form of government. The town's evidence was primarily directed to why incorporation was beneficial, rather than why annexation would not be beneficial. The question before us is whether there is sufficient evidence to support the decision of the ALJ unifying the Forest Lake community by ordering annexation of the town.

■ Our painstaking review of the record convinces us that there is substantial evidence supporting the ALJ's decision to deny the petition for incorporation and to grant the petition for annexation. Evidence established that: (1) a primary and immediate benefit to the town residents would be a reduction of the significant sums of taxpayer funds expended for attorney fees and consultant fees in fighting annexation and pursuing incorporation; (2) merger of the entities would allow for a united community development plan; (3) incorporation of the town would divide the community, stimulate competition for commercial and industrial development, and result in higher costs for services; (4) one elected body would better serve the needs of the Forest Lake community, Washington County, the Metropolitan Council, and the state; (5) annexation would improve financial planning and practices; (6) annexation would enable the Forest Lake community to hire more specialists; (7) the merged community would receive an increase in state aid road funds of approximately $240,000 per year; and (8) government services would be streamlined through elimination of numerous joint powers agreements.

In addition to that evidence, the "Regional Blueprint, a Comprehensive Guide Plan," adopted by the Metropolitan Council, which governs both the city and the town, favors annexation. The Metropolitan Council presented evidence that the incorporation of the town into a separate municipal entity was not consistent with the regional policy. Rather, annexation of the town would be consistent with the regional policy and would strengthen the sense of community. The Metropolitan Council urged the annexation of the town, not incorporation, arguing that annexation would be in the best interests of the community and of the state.

We recognize that the Town presented evidence that it could operate successfully if incorporated independently. We cannot ignore, however, the very substantial evidence favoring consolidation of the two entities through annexation. *See Forest Lake*, 497 N.W.2d at 292 (affirming denial of incorporation where evidence demonstrated that Town of Forest Lake "has portions that are presently urban or suburban or about to become so and is adjacent to a municipality capable of providing the additional necessary services to those portions of the [t]own") (quotation omitted); *Lake Elmo*, 468 N.W.2d at 579 (affirming annexation where evidence demonstrated that City of Oakdale was better able to provide services needed for developing community). Because there is substantial evidence in the record supporting the ALJ's decision, we conclude that the ALJ did not abuse his discretion by concluding that the Forest Lake community would be better served by annexing the town to the city than it would be by incorporating the town into a separate and independent municipality.

**IV.**

■ Appellants assert that the annexation should be set aside because the constitutional rights of the residents of the newly annexed area have been violated by (1) ordering annexation without requiring a subsequent election to either affirm or disaffirm the annexation order; and (2)

depriving the residents of their right to elect a representative government. Whether the annexation violated the constitutional rights of appellants is a question of law, reviewed de novo. *See Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984) (reviewing questions of law de novo). The right to vote and participate in the electoral process poses a sensitive constitutional issue demanding scrupulous evaluation. *Ulland v. Growe,* 262 N.W.2d 412, 415 (Minn.1978). Nevertheless, appellants carry the burden of proving beyond a reasonable doubt that the annexation violated their constitutional rights. *See Westling v. County of Mille Lacs,* 581 N.W.2d 815, 819 (Minn.1998) (providing the challenger has the burden of establishing .beyond a reasonable doubt that state action violates a constitutional right).

## A. Annexation

■ Appellants argue that they had a constitutional right to vote to either affirm or disaffirm the order for annexation. While we are not insensitive to the sense of frustration, voicelessness, and powerlessness expressed by appellants in response to annexation, we conclude that there was no violation of constitutional rights requiring that annexation be set aside.

It is well established that the creation of, and organization of, a local government unit is left to the sound discretion of the individual states. *Hunter v. City of Pittsburgh,* 207 U.S. 161, 28 S.Ct. 40, 52 L.Ed. 151 (1907). Through the Minnesota Constitution, the residents of the state have given the legislature the responsibility of establishing and regulating a system of local government. Minn. Const. art XII, § 3. The legislature has provided for the consolidation of local government units by adopting the annexation provisions in Minn.Stat. ch. 414 (2000). *LaCrescent Township v. City of LaCrescent,* 515 N.W.2d 608, 609–10 (Minn.App.1994). Local action in the field of annexation is thus preempted. *Id.* Therefore, appellants do not have a constitutional right to vote to either affirm, or disaffirm, an order for annexation. *In re Independent Sch. Dist. No. 381,* 298 Minn. 124, 135–36, 213 N.W.2d 631, 638 (1973); *see also Town of Bridgie v. County of Koochiching,* 227 Minn. 320, 35 N.W.2d 537 (1948) (stating that there are no constitutional limitations to the state's power to relinquish the power of local officials).

There is no longer a statutory right to vote to either affirm or disaffirm an order for annexation. Former Minn.Stat. § 414.031, subd. 5 (1990) was repealed in 1992. 1992 Minn. Laws ch. 556, § 12. *See Township of Fergus Falls v. City of Fergus Falls,* 357 N.W.2d 428, 430 (Minn.App. 1984) (requiring election on annexation under former section 414.031, subdivision 5). The Minnesota Constitution recognizes the authority of the legislature to establish and regulate local governmental systems. Although the legislature at one time provided a statutory requirement for elections regarding annexation, the legislature subsequently removed that requirement. Both actions were proper exercises of legislative authority; thus, no constitutional rights are implicated.

## B. City Council

■ Appellants assert that they have been unconstitutionally deprived of their right to a representative form of government because individuals who were not elected by them now govern residents of the newly annexed area. We recognize the important principle that residents of a local unit of government have a right to be governed by elected officials of their choice. *Hanlon v. Towey,* 274 Minn. 187,

196, 142 N.W.2d 741, 746 (1966); *see also Board of Estimate v.. Morris,* 489 U.S. 688, 692, 109 S.Ct. 1433, 1437–38, 103 L.Ed.2d 717 (1989) (holding that the equal protection guarantee of "one person, one vote" extends to local government units). Unquestionably, an election must be held following an annexation so that the residents of the newly annexed area have an opportunity to elect a government that represents their interests. *See Shakopee Mdewakanton Sioux Community v. City of Prior Lake,* 771 F.2d 1153, 1159 (8th Cir.1985) (holding that residents of newly annexed area are entitled to a representative government and therefore must be permitted to participate in local government electoral process following annexation); *Independent Sch. Dist. No. 35 v. Engelstad,* 274 Minn. 366, 144 N.W.2d 245 (1966) (recognizing need for the election of a representative school board following annexation in view of the clear and pressing concerns of individuals with the education of their children); *cf. City of Port Arthur v. United States,* 459 U.S. 159, 103 S.Ct. 530, 74 L.Ed.2d 334 (1982) (protecting the voting rights of citizens following annexation). Disenfranchisement occurs when the residents of a newly annexed area are denied a reasonable opportunity to elect representatives to represent their interests. *See State ex rel. S. St. Paul v. Hetherington,* 240 Minn. 298, 303, 61 N.W.2d 737, 739 (1953) (stating that the fundamental right to vote is preserved when the electoral system allows the citizen to obtain a reasonable equality of representation).

In arguing that they were denied their constitutional right to elect governing officials, appellants correctly note that section 414.031 does not provide for an immediate election of a new governing body following annexation that results from a petition by township residents. *Cf.* Minn.Stat. § 414.031, subd. 4a (requiring election of a new governing body following a joint resolution for annexation). Appellants argue, therefore, that section 414.031 is unconstitutional as applied in this case.

We note initially the admonition that courts should not decide questions of constitutionality of statutes unless it is necessary to do so in order to resolve the issues in the case under consideration. *State v. Hoyt,* 304 N.W.2d 884, 888 (Minn. 1981) (constitutional questions should not be decided unless doing so is necessary "to dispose of the case at bar"). While serious questions may, indeed, be raised regarding section 414.031,[3] we conclude that appellants were not deprived of their constitutional right to elect a representative city council. In September 2000, the district court affirmed the order for annexation and terminated the injunction staying the effects of the ALJ's order. The next regu-

---

**3.** While residents of a newly annexed area are entitled to elect a representative body, an election may be held only under constitutional or statutory authorization. *Howard v. Holm,* 208 Minn. 589, 593, 296 N.W. 30, 32 (1940). While the annexation statutes allow for an election following incorporation, consolidation, or annexation by joint resolution, Minn.Stat. §§ 414.02, subd. 3, .031, subd. 4a, .041, subd. 5, .09, subd. 3 (2000), there is no authority to hold an election following an order for annexation that came about as a result of a petition being filed by township residents. Minn.Stat. ch. 414 (2000).

The ALJ, in this matter, perhaps in recognition of the constitutional right to be governed by a representative body, did order an election for a new representative body to be held within a few months of the annexation, prior to the general election. The election was never held, however, because the town obtained an injunction enjoining the election. While the issue has been rendered moot, we note that the ALJ had no power to order an election in the absence of statutory authority to do so.

larly scheduled election occurred in November 2000, only two months later. It is uncontested that the residents of the newly annexed area were able to participate in, and vote in, the November general election. Therefore, the residents of the newly annexed area had an opportunity to elect a representative form of government within a reasonable time period following the annexation.

Two additional questions remain, however. First, might there have been a violation of the right of residents to file for elective office? Residents have a constitutional right to file for any elective office for which they are qualified. Minn. Const. art. VII, § 6; Minn.Stat. § 205.13 (2000); *Elbers v. Growe,* 502 N.W.2d 810, 813 (Minn.App.1993), *review denied* (Minn. Sept. 30, 1993). Appellants, however, have neither argued, nor presented any evidence, that their constitutional rights were infringed upon because they were deprived the opportunity to file for any elective office for which they are qualified. *See Thiele,* 425 N.W.2d at 582 (holding that appellate courts may not consider matters not argued and considered in the court below); *Henning v. Village of Prior Lake,* 435 N.W.2d 627, 632 (Minn.App.1989) (refusing to address constitutional argument where it was not raised below), *review denied* (Minn. Apr. 24, 1989). Second, did the fact that township residents could appear on the November ballots only as write-in candidates deprive them of their ability to reasonably vote for a particular candidate and to cast their votes effectively? We conclude that the answer is "no."

▮ It is well established in the record that this matter was of great public importance to the entire community. Once the annexation order was affirmed by the district court, there was an active write-in campaign. While none of the write-in campaign candidates were elected, they garnered a substantial number of votes. Because the November election ballot allowed residents to write in the names of candidates who they believed would best represent their interests, the residents had a reasonable opportunity to vote for a particular candidate and cast their vote effectively. *See State ex rel. Town of White Bear v. City of White Bear Lake,* 255 Minn. 28, 38–39, 95 N.W.2d 294, 302 (1959) (finding no constitutional violation of appellants' electoral rights where appellants failed to show that the election did not result in a fair and free expression of the will of the voters). In reaching this conclusion, we note that "there is a strong public policy in favor of finality in elections." *Greenly v. Independent Sch. Dist. No. 316,* 395 N.W.2d 86, 91 (Minn.App. 1986). Accordingly, we conclude that appellants' constitutional right to be governed by a representative form of government has not been violated.

### V.

▮ Finally, appellants allege that taxation by the city without the provision of additional benefits and services to the newly annexed area deprived appellants of their constitutional due process rights. Where the subject of taxation cannot be said to benefit in any meaningful way from actions of the taxing authority, the imposition of taxes violates the constitutional prohibition against taking property without due process of law. *Union Refrigerator Transit Co. v. Kentucky,* 199 U.S. 194, 202, 26 S.Ct. 36, 37, 50 L.Ed. 150 (1905); *State v. Northwest Airlines,* 213 Minn. 395, 409, 7 N.W.2d 691, 698 (1942), *aff'd,* 322 U.S. 292, 64 S.Ct. 950, 88 L.Ed. 1283 (1944). As previously discussed, there is ample evidence in the record demonstrating the benefits the town will receive due to annexation, and the services to be provided by the city. Further, there was evidence

**632**

in the record that the taxes bear a reasonable relationship to the increased services to be received. Because the residents of the newly annexed area will benefit from services provided by the city, their due process rights have not been violated. *See Northwest Airlines,* 213 Minn. at 409, 7 N.W.2d at 698 (holding that state had a fair basis to tax private property because the private property was the beneficiary of state-conferred benefits).

## DECISION

The Office of Strategic and Long Range Planning had the authority to transfer the cross-petitions for annexation and incorporation to the Office of Administrative Hearings for assignment to an ALJ. The ALJ reached a well-reasoned, legally sound decision after making detailed findings of fact that were supported by evidence provided during an eight-day hearing. Moreover, the constitutional rights of the residents of the newly annexed area were not violated because (1) they will receive services proportional to the taxes imposed, and (2) they had a reasonable opportunity to elect a representative governing body. Therefore, we affirm the district court's decision, adopting the ALJ's decision that it is in the best interest of the Forest Lake community to annex the Town of Forest Lake to the City of Forest Lake, thereby creating a single municipal entity.

**Affirmed.**