*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-1186**

In re the Matter of Ossawinnamakee Road Homeowners,
Appellant,

vs.

Commissioner of City of Breezy Point,
Respondent,

Office of Administrative Hearings,
Respondent.

**Filed March 25, 2024**
**Affirmed**
**Schmidt, Judge**

Crow Wing County District Court
File No. 18-CV-22-2427

Jon P. Parrington, Jon P. Parrington, P.A., Minneapolis, Minnesota (for appellant)

Joseph J. Langel, Mary M. Haasl, Ratwik, Roszak & Maloney, P.A., St. Paul, Minnesota (for respondent Commissioner of City of Breezy Point)

Keith Ellison, Attorney General, Nathan J. Hartshorn, Assistant Attorney General, St. Paul, Minnesota (for respondent Office of Administrative Hearings)

        Considered and decided by Wheelock, Presiding Judge; Slieter, Judge; and

Schmidt, Judge.

**SCHMIDT**, Judge

Appellant Ossawinnamakee Road Homeowners challenges the district court's affirmance of a decision by respondent Office of Administrative Hearings (OAH) denying appellant's petition for detachment. Because the OAH engaged in reasoned decision-making and that decision is supported by substantial evidence, we affirm.

## FACTS

This dispute concerns approximately 83.97 acres of land (Subject Parcels[1]) within the City of Breezy Point (the City) along Lake Ossawinnamakee. The facts, as established during the contested hearing, are largely undisputed. The Subject Parcels are owned by 135 property owners and consist of 51 single family homes, two townhome buildings with two attached units, two townhome buildings with four attached units, and 62 garage or storage buildings. The Subject Parcels are not contiguous to other land within the City, and some are located in both the City and the Township of Ideal (the Township). Some dwellings are occupied year-round, while others are occupied seasonally.

The Subject Parcels are zoned R-2, "which is the category for medium density residential," and does not permit "agricultural and manufacturing uses[.]" The City's comprehensive plan contains existing land use maps that list the Subject Parcels as a mix of low- and medium-density residential property. The future land-use map also lists the Subject Parcels as low density residential. A designation of low-density residential refers

---

[1] The Subject Parcels are legally defined as Government Lots 1, 2, and 3 in Section 4, and Government Lots 1 and 2 in Section 3, all in Township 136 N Range 28 W.

to uses that include "single-family homes with some twin homes and other low-density attached housing." A designation of medium-density residential refers to uses that include "a mix of housing types including single-family detached dwellings, twin homes, townhomes, row houses, apartments, and senior housing."

The City maintains a police department, which regularly patrols and responds to medical calls for the Subject Parcels. The City contracts with Pequot Lakes Fire Department for firefighting services. The City's public-works department provides services such as road maintenance and snow plowing. A Joint Powers Agreement between the City and the Township has the Township providing road maintenance and repair services to the roads serving the Subject Parcels, while the City provides those services to certain roads in the Township. The City is, however, permitted to service the roads in the Subject Parcels and has done so in response to resident calls and to address "major issues." The City also provides election services, maintains building-permit records, and issues licenses for various activities. The Subject Parcels do not receive water and sewer service from the City, and the City does not plan to extend sewer services to the Subject Parcels.

In November 2021, appellant filed a petition for detachment from the City. The OAH held a hearing on appellant's petition in January 2022. Regarding the requirements for detachment under Minnesota Statutes section 414.06 (2022), the parties stipulated that: (1) the required number of property owners signed the petition; (2) the Subject Parcels are located within the boundaries of the City and abut a boundary of the Township; (3) detachment of the Subject Parcels would not unreasonably affect the symmetry of the City's boundaries; (4) detachment of the Subject Parcels would still require property

owners, who are obligated to make payments related to a special assessment for roads, to pay the full amount of the assessment following detachment; and (5) the Subject Parcels are not developed for urban commercial or industrial purposes.

At the hearing, the administrative law judge (ALJ) considered the remaining requirements for detachment: (1) whether the Subject Parcels are rural in character and not developed for urban residential purposes; (2) whether the Subject Parcels are needed for reasonably anticipated future development; and (3) whether, if the Subject Parcels were detached, the remainder of the municipality could continue to carry on the functions of government without undue hardship.

Following the hearing, the ALJ issued an order denying detachment. The ALJ found appellant failed to establish "that the property proposed for detachment is rural in character and not developed for urban residential purposes, and that the undeveloped land within the Subject Parcels is not needed for reasonably anticipated future development." The ALJ also found that the City would experience "undue hardship in carrying on the functions of government" if the petition for detachment were granted.

Appellant filed a timely appeal and application for review in the district court. Respondent opposed the appeal, arguing that substantial evidence supported the ALJ's findings denying the petition for detachment.

After a hearing on the appeal, the district court affirmed the OAH's denial of the petition for detachment. The court held that "[b]ased on the evidence and record as a whole . . . the ALJ's findings in the Order are not based on an erroneous theory of law."

This appeal follows.

4

**DECISION**

Appellant challenges the ALJ's denial of their petition for detachment. Property may be detached from a municipality in accordance with Minnesota Statutes section 414.06. After a hearing, the chief ALJ may order detachment if: (1) the requisite number of property owners have signed the petition; (2) the property is rural in character and not developed for urban residential, commercial, or industrial purposes; (3) the property is within the boundaries of the municipality and abuts a boundary; (4) the detachment would not unreasonably affect the symmetry of the detaching municipality; and (5) the land is not needed for reasonably anticipated future development. Minn. Stat. § 414.06, subd. 3. The ALJ may deny the petition for detachment if "the remainder of the municipality cannot continue to carry on the functions of government without undue hardship." *Id.*

A person aggrieved by an order issued under chapter 414 may appeal to the district court and must demonstrate that the order: (1) "was issued without jurisdiction to act"; (2) "exceeded the orderer's jurisdiction"; (3) "is arbitrary, fraudulent, capricious or oppressive or in unreasonable disregard of the best interests of the territory affected"; or (4) "is based upon an erroneous theory of law." Minn. Stat. § 414.07, subd. 2(a) (2022).

A decision is arbitrary and capricious if the agency:

> (a) relied on factors not intended by the legislature; (b) entirely failed to consider an important aspect of the problem; (c) offered an explanation that runs counter to the evidence; or (d) the decision is so implausible that it could not be explained as a difference in view or the result of the agency's expertise.

5

*Citizens Advocating Responsible Dev. v. Kandiyohi Cnty. Bd. of Comm'rs*, 713 N.W.2d 817, 832 (Minn. 2006). An agency's conclusions are not arbitrary and capricious so long as there is a "rational connection between the facts found and the choice made." *In re Review of 2005 Annual Automatic Adjustment of Charges*, 768 N.W.2d 112, 120 (Minn. 2009) (quotation omitted).

In reviewing decisions of administrative agencies, this court need not defer to the district court's decision. *Signal Delivery Serv., Inc. v. Brynwood Transfer Co.*, 288 N.W.2d 707, 710 (Minn. 1980). Accordingly, we conduct "an independent examination of the administrative agency's record and decision and arrive at [our] own conclusions as to the propriety of that determination." *Id.*

Agency decisions "enjoy a presumption of correctness." *City of Lake Elmo v. City of Oakdale*, 468 N.W.2d 575, 577 (Minn. App. 1991). This court "will not interfere with the decision unless the decision is either based on an erroneous theory of law or is not supported by substantial evidence in the record." *McNamara v. Office of Strategic & Long Range Planning*, 628 N.W.2d 620, 625 (Minn. App. 2001).

Findings of fact made by an agency are reviewed under the substantial-evidence test, which requires an "independent examination of the record." *Lake Elmo*, 468 N.W.2d at 577. "Substantial evidence is defined as: (1) such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; (2) more than a scintilla of evidence; (3) more than some evidence; (4) more than any evidence; or (5) the evidence considered in its entirety." *Cannon v. Minneapolis Police Dep't*, 783 N.W.2d 182, 189 (Minn. App. 2010) (quotation omitted).

**I.     The ALJ reasonably determined the Subject Parcels are not "rural" in character and that determination is supported by substantial evidence.**

Appellant challenges the ALJ's finding that the Subject Parcels are not rural in character. *See* Minn. Stat. § 414.06, subd. 3 (providing that the ALJ may order detachment upon finding, among other things, that the property is "rural in character and not developed for urban residential, commercial or industrial purposes"). The statute does not define the term "rural." *See* Minn. Stat. § 414.06.

"We review de novo an agency decision that turns on the meaning of words in a statute or regulation." *In re NorthMet Project Permit to Mine Application*, 959 N.W.2d 731, 757 (Minn. 2021) (quotation omitted); *In re Annexation of Certain Real Prop. to City of Proctor*, 925 N.W.2d 216, 218 (Minn. 2019) ("We review questions of statutory interpretation de novo."). In reviewing questions of law, we are neither bound by the agency's decision, nor do we defer to agency expertise. *Id.*

In addressing the "rural" factor, the ALJ relied on the "commonly understood definitions" of the term. The ALJ found that the Subject Parcels are "platted land and almost all of the lots have been developed with residential structures." The ALJ also found that the Subject Parcels are "urban within the context of a small city in a lakes district of outstate Minnesota," and noted that one lot "has been developed to include multi-family housing units, which are not consistent with rural character." The ALJ concluded that appellant failed to demonstrate that the Subject Parcels are rural in character.

Appellant relies on two arguments in asserting that the ALJ erred in determining the Subject Parcels are not rural in character. First, appellant argues that the statutory term

"rural" should not be defined based on its common usage, and instead should be understood as it is used by the U.S. Census Bureau and in the Minnesota Department of Transportation rules. We reject applying these broader definitions. Instead, we apply the statutory directive to use the "common and approved usage" of the term. Minn. Stat. § 645.08 (2022). "Rural" is defined as "[o]f, relating to, or characteristic of the country." *The American Heritage Dictionary of the English Language* 1536 (5th ed. 2011). Based on our de novo review, we conclude that the ALJ applied the proper definition of "rural."

Second, appellant challenges the ALJ's determination that they failed to prove that the Subject Parcels are rural. They highlight that the Subject Parcels do not receive city water or sewer services; they do not have streetlights, sidewalks, gutters, or fire hydrants; they do not have municipal garbage pickup; and they receive mail by a rural mail carrier.[2] We are not persuaded that these facts render the ALJ's conclusion arbitrary and capricious or otherwise show that the conclusion is not supported by substantial evidence.

Our independent examination of the record reveals that the ALJ's findings are supported by substantial evidence. The ALJ determined that the Subject Parcels are not rural in character and have been developed for urban residential purposes. In reaching that conclusion, the ALJ made the following findings: the Subject Parcels "are platted land and almost all of the lots have been developed with residential structures"; one of the Subject Parcels has been developed to include multi-family housing units "which are not consistent

---

[2] Appellant also protests that the ALJ did not conduct a "site visit" for the purposes of the hearing. However, our review of the law revealed no requirement that the ALJ conduct a site visit during a hearing on a petition for detachment.

8

with rural character"; the Subject Parcels are zoned R-2, which is the classification for medium-density residential development; there are 135 property owners within less than 85 acres; and the City provides services to the Subject Parcels, including police, contracted firefighting, and public works.

In sum, because the ALJ applied an appropriate definition for the term "rural," and the ALJ's findings are supported by substantial evidence, we conclude appellant has failed to demonstrate that the Subject Parcels are "rural" in order to meet the statutory requirement for detachment.[3]

## II.    The City would face an undue hardship if the Subject Parcels are detached.

Appellant challenges the ALJ's undue hardship conclusion, contending the City will not experience an undue economic hardship if the Subject Parcels are detached because the City has revenue coming in and is doing well financially. *See* Minn. Stat. § 414.06, subd. 3 ("The chief administrative law judge may deny the detachment on finding that the remainder of the municipality cannot continue to carry on the functions of government without undue hardship."). We are not persuaded.

The ALJ found that "the Subject Parcels yield property tax payments to the City of $110,845.40, representing four percent [4%] of the City's total property tax levy of $2,747,401.173." The ALJ also found that the loss of that revenue would be equivalent to the loss of two public-works employee positions or one full-time police officer. From these factual findings, the ALJ determined that the City's "loss of 4 percent [4%] of its levied

---

[3] Given our conclusion that appellant failed to meet their burden on the "rural" factor, we need not address the "reasonably anticipated for future development" issue.

property tax total would create an undue hardship in carrying out the functions of the municipality related to public works services and policing."

Our review of the record reveals that the ALJ's findings are supported by substantial evidence, and those findings support the conclusion that detachment would create an undue hardship for the City. Because that conclusion is not based on an erroneous theory of law, we defer to the ALJ's decision as an independent basis for affirming the order denying appellant's request for detachment. *See McNamara*, 628 N.W.2d at 625.

**Affirmed.**